469 S.E.2d 114

**Billie BURGESS, Plaintiff Below, Appellee,**

v.

**Mark PORTERFIELD, Defendant Below, Appellee.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff Below, Appellant,**

v.

**SUPERAMERICA GROUP, INC., d.b.a. SuperAmerica Corporation, Third–Party Defendant Below, Appellee.**

No. 22956.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided March 11, 1996.

Joanna I. Tabit, Mark E. Kinley, Steptoe & Johnson, Charleston, for Mark Porterfield & State Farm Mutual Automobile Insurance Company.

David L. Wyant, Shaun L. Peck, Shuman, Annand & Poe, Charleston, for Billie Burgess.

McHUGH, Chief Justice:

State Farm Mutual Insurance Company, appearing on behalf of and in the name of defendant Mark Porterfield,[1] appeals a November 2, 1994 order in which the Circuit Court of Kanawha County directed that the amount of the pretrial settlement received by plaintiff Billie Burgess be credited to the compensatory damage award but not to the punitive damages awarded against defendant Porterfield. State Farm also appeals a December 22, 1994 order in which the circuit court awarded plaintiff attorney's fees and costs because she was required to litigate her uninsured motorist claim with State Farm, her insurer, and because she "substantially prevailed" at trial. This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons discussed below, we affirm the orders of the circuit court.

## I.

On or about December 22, 1988, plaintiff Billie Burgess was injured when the automobile in which she was a passenger was struck by a vehicle driven by defendant Mark Porterfield, an uninsured motorist. At the time of the accident, plaintiff carried automobile insurance with defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), including uninsured motorist

coverage in the amount of $100,000 per person.

On February 22, 1990, plaintiff instituted an action in the Circuit Court of Kanawha County for both actual and punitive damages against defendant Porterfield, alleging that he "negligently, carelessly, wantonly and maliciously operated [an automobile] owned by his mother Norma Porterfield[2] in such a manner that it collided with [an automobile] owned and operated by B. Gregory Foutty, in which plaintiff was a passenger, and proximately caused the plaintiff's injuries." (footnote added). Plaintiff further alleged that defendant Porterfield "was operating said motor vehicle while unable and incompetent to control [it] due to the fact that he was under the influence of alcohol[.]"

On December 14, 1990, plaintiff instituted a separate action for both actual and punitive damages against SuperAmerica Group, Inc., doing business as SuperAmerica, a corporation (hereinafter "SuperAmerica"), alleging that it "sold intoxicating beverages to [defendant] Porterfield at a time when [SuperAmerica] knew or should have known that [defendant] Porterfield was physically incapacitated from drinking[,]" and that in selling intoxicating beverages to defendant Porterfield "while he was obviously operating a motor vehicle and was obviously physically incapacitated," SuperAmerica acted "in reckless and wanton disregard of the safety and well-being of motorists, passengers and pedestrians on the streets and highways, including said plaintiff."

After defendant Porterfield brought a third-party complaint[3] against SuperAmerica, plaintiff was granted leave to amend her complaint so as to bring a direct action against SuperAmerica.[4] Plaintiff's amended complaint alleged the same theories as the

---

1. See W.Va.Code, 33–6–31(d) [1988], which states, in relevant part:

   Any insured intending to rely on the coverage required by subsection (b) of this section [our uninsured and underinsured motorists statute] shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named

   party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

2. Norma Porterfield was killed in the accident.

3. See W.Va.R.Civ.P. 14(a).

4. See W.Va.R.Civ.P. 15(a).

original complaints and demanded from both defendants actual and punitive damages.

Plaintiff subsequently entered into a release and settlement agreement with Super-America in which plaintiff, in exchange for the sum of $150,000, agreed, *inter alia*, to release SuperAmerica "of and from any and all claims, demands, actions, causes of action, liability expenses and damages of every kind and character" in any way related to the above-described accident. The agreement expressly released SuperAmerica "of all claims arising out of or alleged in any manner to have been caused by intentional, deliberate, willful, unreasonable, abusive, wanton and/or reckless misconduct" on the part of SuperAmerica. By order dated June 1, 1993, the circuit court approved the release and settlement agreement as fair and reasonable, having been entered into by the parties in good faith. Accordingly, plaintiff's complaint against SuperAmerica was dismissed with prejudice.[5]

Prior to trial, the remaining parties, plaintiff and defendant Porterfield, stipulated that defendant Porterfield would be entitled to offset $201,427.42 against whatever damages, if any, the jury awarded. This figure represented the total payments already received by plaintiff: $150,000 settlement from Super-America; $25,000 uninsured motorist coverage (the policy limits) under the State Farm policy covering B. Gregory Foutty, the driver of the car in which plaintiff was a passenger at the time of the accident; and $26,427.42, received pursuant to the medical payments benefit portions of the insurance policies owned by both plaintiff and driver Foutty.

Following a three-day trial on damages only,[6] plaintiff was awarded $136,270.57 in compensatory damages and $137,000 in punitive damages, for a total damage award of $273,270.57. According to State Farm, it immediately paid to plaintiff $71,843.15, or the difference between the total damage award of $273,270.57 and $201,427.42, the sum previously stipulated by the parties as a credit against the jury award. However, in an order entered November 2, 1994, the circuit court concluded that the $201,427.42 in settlement monies should be credited against the $136,270.57 compensatory damage award, completely extinguishing that award; however, the court refused to credit the settlement monies against the $137,000 punitive damage award.

Subsequently, in an order entered December 22, 1994, the circuit court, citing this Court's decision in *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994), awarded plaintiff the sum of $28,156.85, the difference between plaintiff's policy limits of $100,000 and $71,843.15, the amount previously tendered to plaintiff by State Farm.[7]

Also in the December 22, 1994 order, the circuit court ruled on plaintiff's motion for attorney's fees and costs. State Farm had argued, in response to plaintiff's motion, that it had attempted to negotiate settlement of plaintiff's claim against defendant Porterfield upon execution of the settlement and release agreement between plaintiff and SuperAmerica. Despite State Farm's contention that plaintiff would accept no settlement less than the $100,000 policy limits, the circuit court determined that the plaintiff was entitled to

---

**5.** Defendant and third-party plaintiff Porterfield's complaint and cross-claim against SuperAmerica and SuperAmerica's counterclaim and cross-claim against defendant and third-party plaintiff Porterfield were likewise dismissed with prejudice.

**6.** Defendant Porterfield's liability was admitted prior to trial.

**7.** The circuit court noted in its December 22, 1994 order that State Farm's statutory obligation to pay under *W.Va.Code,* 33-6-31(b) [1988] is confined to the policy limits of the uninsured motorist coverage. *Marshall,* at syl. pt. 5, in relevant part. The circuit court further noted, however, that

[w]here an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990). *Marshall,* at syl. pt. 7. Thus, although State Farm was only liable for the amount recovered up to the policy limits of $100,000, there remains an excess verdict of $37,000. However, whether State Farm may be liable for this excess verdict in a separate suit is not an issue presently before this Court. *See Id.*

attorney's fees and costs because she was required to litigate her uninsured motorist claim against State Farm, her own insurer, to recover amounts under her policy and because she substantially prevailed at trial. Accordingly, the court awarded plaintiff $33,333.33 in attorney's fees, or one-third of the face amount of plaintiff's uninsured motorists coverage, plus $3,305 in costs.

It is from these orders that State Farm now appeals.

## II.

As indicated above, the parties agreed, prior to trial, that the jury award would be reduced by $201,427.42, an amount previously paid to plaintiff in settlement and medical payment benefits (hereinafter "pretrial settlement"). Following the jury verdict, however, the circuit court offset only the $136,270.57 compensatory damage award, allowing the $137,000 punitive damage award to stand. Though this Court has never addressed this issue, the circuit court, in refusing to offset the pretrial settlement against the punitive damage award, followed the view of the clear majority of jurisdictions.

### A.

The parties agree with the well-established principle that "a plaintiff is entitled to one, but only one, complete satisfaction for his injury." *Board of Education v. Zando, Martin & Milstead,* 182 W.Va. 597, 604, 390 S.E.2d 796, 803 (1990) (citations omitted). *See* syl. pt. 7, in relevant part, *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982) ("[T]here can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.") Indeed, this principle is reflected in the parties' agreement to deduct the amount of the pretrial settlement from the damages awarded plaintiff by the jury. As this Court previously held in syllabus point 8 of *Charles v. State Farm Mutual Auto. Ins. Co.,* 192 W.Va. 293, 452 S.E.2d 384 (1994):

 ' "Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong." Point 2, Syllabus, *Hardin v. The New York Central Railroad Company,* 145 W.Va. 676, [116 S.E.2d 697 (1960) ]. Syllabus Point 1, *Tennant v. Craig,* 156 W.Va. 632, 195 S.E.2d 727 (1973).' Syllabus Point 5, *Board of Educ. of McDowell County v. Zando, Martin et al.,* 182 W.Va. 597, 390 S.E.2d 796 (1990).

*Accord* syl. pt. 3, *McDowell County Board of Educ. v. Stephens,* 191 W.Va. 711, 447 S.E.2d 912 (1994) (" 'Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.' Syl. Pt. 7, in part, *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990).") It is State Farm's contention that, under the "one satisfaction" principle, both the compensatory and punitive damage awards should be reduced by the amount of the pretrial settlement.

### B.

■ There is a common view among the majority of jurisdictions that because punitive damages are awarded not to compensate a plaintiff but to punish an individual wrongdoer, the "one satisfaction" principle is not offended by a court's refusal to deduct settlement monies from a punitive damage award. In *Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801, 804 (5th Cir.1983), the Fifth Circuit Court of Appeals explained:

 [T]he rationale of the 'one satisfaction' rule is usually inapposite to punitive damages. The purpose of the rule is to ensure that a plaintiff receives no more than full compensation for his loss. A plaintiff awarded punitive damages has been given the right to receive more than 'one satisfaction.' The award of punitive damages is unconcerned with compensation; it is intended to punish the wrongdoer and to deter the commission of similar offenses in the future. To further the objectives of punishment and deterrence, it is more important that a defendant pay for his wrongdoing than that the plaintiff receive the payment.

(citations omitted).[8]

This rationale was similarly applied in *Goad v. Macon County, Tenn.*, 730 F.Supp. 1425 (M.D.Tenn.1989) wherein plaintiff brought a 42 U.S.C. § 1983 civil rights action against eight defendants, three of whom settled with plaintiff before trial. Though the court allowed a reduction of the compensatory damages awarded against the nonsettling defendants, it held that the punitive damages, which are especially important in punishing civil rights violators, were not subject to setoff:

> The purpose of punitive damages is to punish and deter. Furthermore, the focus is upon particular defendants rather than upon compensating a victim as is the case with compensatory damages. The focus is undistorted when set-offs are applied to compensatory damage awards because the victim still receives complete compensation. However, the focus of punitive damage awards can be completely bypassed if reduced by the amount of settlement monies received from other defendants. The target of the punitive damage award, the defendant the jury intended to punish, would escape with absolutely no punishment at all if the settlement was as large as the compensatory damage award and punitive damage award combined. If not as large, there would still be a lesser punishment than the jury deemed appropriate. The court concludes such a result is inconsistent with the important purpose of punishing specific violators of civil rights. Accordingly, such a result will not be allowed.

Additionally, refusal to allow a set-off against punitive damages will ensure that adequate specific deterrence exists for those particular defendants which, according to the jury, need particular attention and punishment.

*Id.* at 1432. *See Beerman v. Toro Manufacturing Corp.*, 1 Haw.App. 111, 615 P.2d 749, 755 (1980) ("Punitive damages awarded against one tortfeasor do not constitute double recovery with respect to a judgment against another tortfeasor since the purpose of punitive awards is to punish a particular offender rather than to compensate the victim for its injury." (citations omitted)); *Chaiken v. Eldon Emmor & Co., Inc.*, 597 N.E.2d 337, 347 (Ind.Ct.App.1992) ($18,675 compensatory damage award extinguished by $80,000 pretrial settlement. However, $80,000 punitive damage award allowed to stand because such damages "were aimed at punishing the acts of [the nonsettling defendants] and not to compensate [the plaintiff]"); *Hill v. Budget Finance & Thrift Co.*, 383 S.W.2d 79, 82 (Tx.Civ.App.1964) (" 'whatever sums [settling] defendants may have paid in settlement of [plaintiff's] claims ... for exemplary damages are not to be credited against whatever judgment [plaintiff] may recover for the entire indivisible actual damage suffered by reason of the combined ... efforts of defendants. For each defendant ... is answerable alone and separately ... for such exemplary damages if any, as may be found by the jury.' " (citation omitted)); 22 Am.Jur.2d *Damages* § 804 (1988).[9]

---

**8.** Though the *Ratner* court "recognize[d] that the 'one satisfaction' rule usually should not apply to punitive damages[,]" 719 F.2d at 805, it, nevertheless, held, in a decision expressly limited to the circumstances then before the court, that where (1) nonsettling defendants were two corporations wholly owned and completely controlled by two settling defendants in a securities action, (2) the settling defendants created the nonsettling defendants for the sole purpose of receiving property allegedly taken by fraud, and (3) the liability of the nonsettling defendants resulted solely from the actions and alleged misrepresentations of the settling defendants, the one satisfaction rule could be applied. The court came to this conclusion because the settlement after judgment satisfied both the compensatory and punitive damages awarded to the judgment creditor. Thus, the court determined that the

goals of punishment and deterrence were adequately served.

**9.** Other jurisdictions have likewise followed the majority view but, unlike West Virginia, have adopted some version of the Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 57 (1975) ("UCATA"). The UCATA, *inter alia*, "establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability." Commissioners' Prefatory Note (1955 Revision) 12 U.L.A. at 59. *See Owens–Illinois v. Armstrong*, 326 Md. 107, 604 A.2d 47, 56–57 (1992), *cert. denied*, 506 U.S. 871, 113 S.Ct. 204, 121 L.Ed.2d 145 (the purpose of Maryland's version of the UCATA is to prevent double recovery by the plaintiff and to require joint tortfeasors to share the responsibili-

Comparatively, few courts have subscribed to State Farm's position that pretrial settlement monies should be deducted from punitive damage awards. For example, in *Richards v. Michelin Tire Corp.*, 786 F.Supp. 964 (S.D.Ala.1992), plaintiff consummated a *pro tanto* settlement with two defendants prior to trial. *Id.* at 965. The terms of the settlement and release agreements provided for payment to plaintiff of $1,000,000 from each defendant in return for the plaintiff's waiving " 'any and all actions, causes of action, claims, demands, damages, costs, loss of service, expenses and compensation, or suits of any kind or nature whatsoever and, particularly, any and all known or unknown injuries, claims, rights of action or damages which he may now or hereafter have[.]' " *Id.* The United States District Court for the Southern District of Alabama, without either discussing or comparing the purposes of compensatory and punitive damages, permitted a set-off of the pretrial settlement monies against both the compensatory and punitive damages awarded against the nonsettling defendant because "plaintiff clearly maintained claims of wantonness, which include punitive damages, against the settling defendants at the time the *pro tanto* releases were executed." *Id.* at 966. In addition, the court heavily relied on the language of the releases, which stated, *inter alia*, that "any and all claims are relinquished by the plaintiff in return for the settlements[,]" and "that all 'damages' are also given up in return for the settlements." *Id. See Dykes v. Raymark Industries, Inc.*, 801 F.2d 810 (6th Cir.1986), *cert. denied*, 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987) (court allowed pretrial settlement payments to be setoff against punitive damages awarded for willful and wan-

ton conduct because such conduct was not intended to be excluded from coverage under Tennessee's Contribution Among Tortfeasor's Act).

Notably, in *Enstar Group, Inc. v. Grassgreen*, 812 F.Supp. 1562, 1583 (M.D.Ala. 1993), the United States District Court for the Middle District of Alabama was compelled to follow the current Alabama law that "punitive damages cannot be apportioned among joint tortfeasors according to fault and that a settlement of a punitive damages claim by one joint tortfeasor must be credited against a subsequent punitive award against the other tortfeasor. *Tatum v. Schering Corp.*, 523 So.2d 1042 (Ala.1988); *Black Belt Wood Co. v. Sessions*, 514 So.2d 1249 (Ala.1986)." In a telling footnote, however, the court expressed its reluctance and disapproval: "Since punitive damages are meant to punish the defendant for his wrongdoing and to deter others from similar wrongdoing rather than to compensate the plaintiff, it is illogical to say that joint tortfeasors are jointly liable for punitive damages regardless of the degree of their individual fault simply because all contributed to the same injury.... [h]owever, the court considers itself bound by the holding of the majority in *Tatum*, [*supra*]. Otherwise, the court would not allow a credit against punitive damages." *Grassgreen*, at 1583 n. 14.

### C.

Though this Court has not addressed the precise issue presently before it, it has, on many occasions, spoken on punitive damages and the justification for awarding them:

ty for compensating an injured party. However, punitive damages are exemplary in nature, awarded over and above full compensation. While a compensatory award is a joint and several liability against all the joint tortfeasors, a punitive damage award is an individual liability and the settlement of a punitive damage claim by one tortfeasor will not reduce either the compensatory or punitive damage award against the nonsettling tortfeasors.) and *Exxon Corp. v. Yarema*, 69 Md.App. 124, 516 A.2d 990, 997 (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987) (Punitive damages are exemplary in nature and as such, may be awarded against some defendants and not others, "depending, not upon the dam-

ages sustained by the plaintiff, but upon the differing degree of culpability or the existence or nonexistence of malice on the part of the defendants."). *See also Harriss v. Elliott*, 207 Ill. App.3d 384, 152 Ill.Dec. 359, 363, 565 N.E.2d 1041, 1045 (1991) (without deciding whether setoff is ever applicable to punitive damage awards, the court noted that, unlike compensatory damages, punitive damages "are to be assessed separately and not jointly. A jury's finding that a specific amount would sufficiently punish and deter a defendant from further willful and wanton misconduct would be of diminished effect if that party did not have to pay the full amount.").

' "Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong." Syllabus Point 1, *O'Brien v. Snodgrass,* 123 W.Va. 483, 16 S.E.2d 621 (1941).' Syllabus point 4, *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982).

Syl. pt. 13, *Mace v. Charleston Area Med. Ctr. Found.,* 188 W.Va. 57, 422 S.E.2d 624 (1992). *See* syl. pt. 3, *Chesser by Hadley v. Hathaway,* 190 W.Va. 594, 439 S.E.2d 459 (1993); syl. pt. 2, *C.W. Development v. Structures, Inc.,* 185 W.Va. 462, 408 S.E.2d 41 (1991); *Jarvis v. Modern Woodmen of America,* 185 W.Va. 305, 312, 406 S.E.2d 736, 743 (1991). Moreover, in *Davis v. Celotex Corporation,* 187 W.Va. 566, 569, 420 S.E.2d 557, 560 (1992), we reiterated that punitive damages are awarded " '(1) to punish the defendant; (2) to deter others from pursuing a similar course; and, (3) to provide additional compensation for the egregious conduct to which the plaintiff has been subjected.' " (quoting *Harless,* 169 W.Va. at 691, 289 S.E.2d at 702 and citing *Jarvis, supra* and *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982)). *See Hensley v. Erie Insurance Co.,* 168 W.Va. 172, 182–83, 283 S.E.2d 227, 233 (1981); *Wells v. Smith,* 171 W.Va. 97, 104, 297 S.E.2d 872, 879 (1982), *overruled on other grounds, Garnes v. Fleming Landfill,*

*Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1992) ("punitive damages serve to vindicate the victims of the defendant's wrongful conduct and provide a substitute for personal revenge."). We believe that the articulated purposes of punitive damage awards will be fairly served only if a credit of pretrial settlement monies is not permitted against such damage awards.

In this case, the jury expressly found that the amount of $136,270.57 would fairly compensate plaintiff for her injuries.[10] The jury further found that defendant Porterfield's conduct of driving while intoxicated was "intentional, wanton, willful or reckless[.]" Accordingly, the jury assessed punitive damages against him in the amount of $137,000. Clearly, this sum was intended as an award *over and above full compensation* for plaintiff's injuries. Syl. pt. 13, *Mace, supra.* This sum was further meant to punish defendant Porterfield *individually* for endangering the lives of unsuspecting motorists and pedestrians and to deter him and others from engaging in similarly egregious conduct in the future.

We hold, therefore, that defendants in a civil action against whom awards of compensatory and punitive damages are rendered are entitled to a reduction of the compensatory damage award, but not the punitive damage award, by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.[11]

---

10. In calculating the total compensatory damage award, the jury assigned the following damage amounts: $35,895.57 for medical bills, doctors' bills and expenses; $25,000 for past and future physical pain and suffering, disfigurement and scarring; $25,000 for past and future medical pain and suffering, mental anguish, embarrassment, humiliation or degradation; $2,100 for past lost wages; $28,275 for impairment of earning capacity; and $20,000 for loss of enjoyment of life.

11. As further support of its argument that the punitive damage award should have been reduced by the amount of the pretrial settlement, State Farm contends that the purpose of punitive damages, to punish the defendant and to deter future similar conduct, will not be achieved in this case, in that State Farm, plaintiff's insurer and a self-described "blameless party," and not the negligent tortfeasor, will be responsible for payment of the award.

We find this argument to be in conflict with the fact that insurance carriers such as State Farm routinely insure against punitive damages. Though State Farm, which does not deny liability for punitive damages in this case, could have declined to insure against punitive damages by including an express exclusion to that effect in plaintiff's policy, it, instead, contracted with plaintiff to assume liability for such awards. *See Hensley,* 168 W.Va. at 183–84, 283 S.E.2d at 233. In doing so, State Farm was not concerned that such coverage would subvert the purposes of punitive damages. We, therefore, find State Farm's argument to be without merit.

Finally, State Farm points out that the purpose of *W.Va.Code,* 33–6–31(b) [1988], our uninsured motorist statute, is to fully compensate an injured person for his or her damages not compensated by a negligent tortfeasor. *State Automobile Mutual Insurance Co. v. Youler,* 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990). *See Id.* at syl.

## III.

State Farm's second and final assignment of error is that plaintiff did not "substantially prevail" at trial and, accordingly, should not have been awarded attorney's fees and costs.

In *Marshall,* 192 W.Va. at 100, 450 S.E.2d at 797, we extended the right of recovery of attorney's fees and costs to include, in addition to property damage claims, uninsured and underinsured motorist coverage claims because such coverage "constitutes first party insurance ... [which] means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits." *See Hadorn v. Shea,* 193 W.Va. 350, 352, 456 S.E.2d 194, 196 (1995). However, the right to recover such fees and costs "depends on a showing that the insured seeking reimbursement *substantially prevailed* in the ultimate resolution of the claim against his insurer." (emphasis provided) *Id.*

▆▆▆ In *Hadorn,* we discussed the circumstances under which a party "substantially prevails" against his or her own insurer for purposes of recovering attorney's fees and costs, and held in syllabus points one and two:

'The question of whether an insured has substantially prevailed against his insurance company on a property damage claim is determined by the status of negotiations between the insured and the insurer prior to the institution of the law suit. Where the insurance company has offered an amount materially below the damage estimates submitted by the insured, and the jury awards the insured an amount approximating the insured's damages, the insured has substantially prevailed.' Syl. pt. 2, *Thomas v. State Farm Mut. Auto. Ins. Co.,* 181 W.Va. 604, 383 S.E.2d 786 (1989).

'An insured "substantially prevails" in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds.' Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.,* 183 W.Va. 9, 393 S.E.2d 647 (1990).

*Id. See also Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986).

State Farm maintains that upon consummation of the settlement and release agreement between plaintiff and SuperAmerica, it likewise attempted to negotiate settlement of plaintiff's claim against defendant Porterfield by offering her $50,000, or half of the $100,000 policy limits, for settlement and release of all claims. Though State Farm asserts that plaintiff refused to accept any settle-

pt. 4, in part. State Farm maintains that if the pretrial settlement is not deducted from the punitive damage award as well as from the compensatory damage award, plaintiff will receive more than full compensation for the damages awarded her by the jury and thus, the purpose of *W.Va. Code,* 33–6–31(b) [1988] will not be served. We are not persuaded by State Farm's argument.

*W.Va.Code,* 33–6–31(b) [1988] states, in relevant part: "Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]" *See* Syl. pt. 4, *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994) ("Under W.Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle. W.Va.Code, 33–6–31(b).")

The language of *W.Va.Code,* 33–6–31(b) [1988] is clear. The punitive damage award, which we concluded is not to be credited against the pretrial settlement, is a sum which was awarded plaintiff by the jury and which she is legally entitled to recover as damages from defendant Porterfield, the operator of the uninsured motor vehicle. As plaintiff's insurer, State Farm is required to compensate her for these damages, not compensated by defendant Porterfield, the negligent tortfeasor. *Youler, supra.* Accordingly, State Farm is required to pay the punitive damage award up to the policy limits of the uninsured motorist coverage. *Marshall,* at syl. pt. 5, in part, and 7; *W.Va.Code,* 33–6–31(b) [1988]. *See* n. 6, *supra.*

 

ment less than the policy limits, plaintiff contends that State Farm extended only the one offer of $50,000.

In its December 22, 1994 order awarding plaintiff attorney's fees and costs, the circuit court concluded, *inter alia:*

A jury awarded plaintiff $136,270.57 in compensatory damages wherein State Farm had previously failed to offer plaintiff's claim of the $100,000.00 limits of [plaintiff's] policy of uninsured motorist coverage. Had plaintiff settled *short* of trial for the policy limits of $100,000.00[,] settlement would have extinguished plaintiff's claim for compensatory damages, including *Hayseeds* aspects, (as well as punitive damages). But with an offer from State Farm below her policy limits, plaintiff was required to litigate before a jury in order to recover up to policy limits. There can be no dispute but that plaintiff 'substantially prevailed' by the verdict.

(emphasis provided).

 On appeal, this Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo. See* syl. pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995) ("In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."); *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). *See also* syl. pt. 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994) ("The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*")

Upon review of the December 22, 1994 order, we cannot conclude that the circuit court abused its discretion in awarding plaintiff attorney's fees and costs.

### IV.

For the reasons discussed herein, we hereby affirm the November 2, 1994 and December 22, 1994 orders of the Circuit Court of Kanawha County.

Affirmed.