542 S.E.2d 849

**Richard Paul DRIVER, Jr., Plaintiff Below, Appellant,**

v.

**Mary Elizabeth DRIVER, Defendant Below, Appellee.**

**No. 27808.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2000.

Decided Dec. 5, 2000.

Randall A. Minor, Esq., Morgantown, for Appellant.

Raymond H. Yackel, Esq., Morgantown, for Appellee.

PER CURIAM.

The appellant in this divorce proceeding, Richard Paul Driver, Jr., contends that the Circuit Court of Preston County erred in awarding his former wife, Mary Elizabeth Durant (Driver), permanent alimony.

I.

**BACKGROUND**

The appellant, Richard Driver, and the appellee, Mary Driver, were married in March 1984, and shortly thereafter, he entered medical school at the University of

South Carolina. For approximately the next nine years, Richard Driver attended medical school and pursued a residency, while Mary Driver worked as a nurse.

In June 1993, Richard Driver was employed as a fellow in anesthesiology at Wake Forest University. By this time, the parties had had three children and Mary Driver became a full-time housekeeper caring for the children. In July 1994, Richard Driver was employed as an anesthesiologist at the West Virginia Health Sciences Center in Morgantown, West Virginia, and earned a gross income of approximately $160,000 per year. Shortly thereafter, Mary Driver began taking classes at West Virginia University in pursuit of a master's degree in nursing.

On October 1, 1997, Richard Driver filed for a divorce in the Circuit Court of Preston County. Mary Driver filed an answer, and subsequently a temporary order was entered awarding her custody of the parties' three children and monthly support. As the case progressed, the trial of the divorce issue and the other issues in the case was bifurcated, and on September 30, 1998, the circuit court granted the parties a divorce on the ground of irreconcilable differences.

The remaining issues were considered by a family law master who conducted a series of hearings which concluded on December 8, 1998. At the conclusion of the hearings, the circuit court awarded Mary Driver permanent custody of the parties' children and child support of $1,709.52 per month, with the provision that the child support would be increased to $1,943.91 per month effective March 1, 2002. Richard Driver was granted liberal visitation rights. In the present proceeding, the family law master's recommendations relating to child custody and support are not in issue.

In addition to awarding Mary Driver child support, the family law master recommended that she receive rehabilitative alimony of $3,500 per month until March 2002. Further, the family law master recommended that she receive permanent alimony in the amount of in the amount of $1,500 per month commencing on March 1, 2002, and continuing until the death of either party, or until her remarriage, or until she maintained an ongoing relationship with another individual who significantly contributed to her finances.

Richard Driver filed a petition for review with the circuit court in which he requested that the circuit court overturn the recommended decision of the family law master with respect to permanent alimony. The court took the petition under consideration, and by order entered December 3, 1999, adopted the recommendations of the family law master. In so doing, the court awarded Mary Driver permanent alimony in the amount of $1,500 per month, effective March 1, 2002.

In the present proceeding, Richard Driver claims that the lower court based its permanent alimony award on the disparity in the parties' income-earning capacities, without any specific finding that such disparity was a product of the marriage. He claims that it is inappropriate for a court to make an award of alimony solely upon such disparity, and that as a consequence, the circuit court erred in adopting the family law master's permanent alimony recommendation in this case. Richard Driver also claims that the lower court effectively found that he had a lifetime responsibility to maintain the standard of living Mary Driver had enjoyed during marriage, and that it effectively granted her a continuing interest in his medical degree and professional career.

## II.

### STANDARD OF REVIEW

 This Court has indicated that in cases such as the present case, a circuit court's final order should be reviewed under an abuse of discretion standard. Specifically, in Syllabus Point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), the Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." *See Magaha v. Magaha*, 196 W.Va. 187, 469 S.E.2d 123 (1996); *Stephen L.H. v. Sherry L. H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

## III.

## DISCUSSION

■ Under W. Va.Code 48–2–15(i), a person is barred from receiving alimony in three instances: (1) where the person has committed adultery; (2) where subsequent to the marriage the person has been convicted of a felony which is final; and (3) where a person has actually abandoned or deserted his or her spouse for six months. In the present case, the parties were granted a divorce on the ground of irreconcilable differences. There is no showing that Mary Driver committed adultery, that she was convicted of a felony, or that she had actually abandoned or deserted Richard Driver for six months. Thus, there is no statutory bar to her receipt of alimony.

■ If it is determined that an award of alimony is appropriate, W. Va.Code 48–2–16(b), as in effect at the time of the hearings in the present case, dictated that 16 factors be considered in determining the amount of the award. The factors were:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.[1]

Although there are 16 factors, it is not necessary for a family law master to make specific findings as to each factor, but only as to those factors which are applicable and appropriate to the case. *See* note 30, *Burnside v. Burnside,* 194 W.Va. 263, 275, 460 S.E.2d 264, 276 (1995).

■ As has been previously stated, Richard Driver, in the present appeal, claims that the circuit court based its decision on the disparity in the parties' income earning capacities and that an award of alimony solely on such a disparity is improper.

The record fails to support Richard Driver's claim that the circuit court established

---

1. West Virginia Code 48–2–16 was amended effective May 20, 1999, after the hearings in the present case were completed. In the present version, there are 20 factors to be considered.

The Legislature had added such factors as whether a party has foregone education during marriage and the standard of living established during the marriage.

the amount of alimony solely on the parties' income-earning capacities. To the contrary, the record shows that the family law master rendered a rather lengthy recommended decision which addressed many aspects of the parties' marriage and their overall life circumstances. In the decision, the Court believes that the family law master rather directly and pointedly addressed 12 of the 16 factors outlined in W. Va.Code 48–2–16(b), and inferentially addressed two of the other points. For example, the family law master specifically noted the age of the parties and the fact that they had been married for 14½ years. The family law master examined in detail the educational and employment background of each party. The family law master examined the financial contributions of the parties to the marriage on a year-by-year basis and pointed out that Mary Driver had postponed her desire to pursue her education while Richard Driver was pursuing his career. The family law master noted that even if Mary Driver succeeded in obtaining her Ph.D., it was doubtful that she would ever earn substantially more than she was earning as a nurse manager. The family law master also addressed the expenses that Mary Driver had to bear to support herself and to provide for the parties' children. Finally, the tax implications of the recommended decision were noted. The family law master's recommendations ultimately served as the basis of the court's decision.

An award of alimony by its very nature, as well as by the guidelines established by the Legislature, does entail the examination of various financial questions. As has been indicated above, one of those factors is the income-earning abilities of the parties. W. Va.Code 48–2–16(b)(4). In the present case, it does appear that the family law master and the circuit court considered the disparity in the parties' income-earning abilities, but they did so in the context of the multiple factors which should be considered in establishing the amount of alimony. The Court does not perceive that the family law master or the court erred in doing this, or that the court abused its discretion in following this procedure in making the alimony award in this case. Further, this Court believes that, contrary to Richard Driver's claims, the circuit court did not find that Richard Driver had a

responsibility to maintain Mary Driver's standard of living for life and did not award her a continuing interest in his medical degree or professional career. Rather clearly, the permanent alimony award was not made unconditionally for life, but was set to terminate upon Mary Driver's remarriage or upon her maintaining a relationship with another who substantially contributed to her finances. It also rather clearly appears that the amount of the alimony award was in no way tied to the value of Richard Driver's medical degree or professional career.

For the reasons stated, the judgment of the Circuit Court of Preston County is affirmed.

Affirmed.