IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-698

_____

FILED

**June 6, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE A.F.

_____

Appeal from the Circuit Court of Wood County
The Honorable Robert A. Waters, Judge
Civil Action No. 21-JA-150

VACATED AND REMANDED WITH DIRECTIONS

_____

Submitted: April 22, 2025
Filed: June 6, 2025

Joseph Munoz, Esq.
Parkersburg, West Virginia
Counsel for the Petitioners,
Intervenor Grandparents, P.F. and R.F.

John B. McCuskey, Esq.
Attorney General
Kristen E. Ross, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent,
Department of Human Services

Keith White, Esq.
St. Mary's, West Virginia
Guardian Ad Litem for A.F.

Michael Farnsworth, Esq.
Parkersburg, West Virginia
Counsel for the Intervenor Foster Parents,
K.B. and M.B.

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.
JUSTICE TRUMP concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard.  We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*."  Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

2.    "Questions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused."  Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977).

3.    "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."  Syl. Pt. 5, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

4.    "West Virginia Code § [49-4-114(a)(3) (2024)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the [DHS] find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests

i

of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 4, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

5.     In denying grandparent placement the circuit court must make detailed findings of fact and conclusions of law demonstrating that it considered the grandparent preference in West Virginia Code § 49-4-114(a)(3) (2024) and determined, based on the record in its entirety, that the preference was overcome by the best interests of the child.

WOOTON, Chief Justice:

Petitioners P.F. and R.F. [1] ("petitioners") appeal the November 8, 2023, order of the Circuit Court of Wood County denying their motions for visitation and custody with respect to their grandchild A.F., who is the subject of this abuse and neglect proceeding. On appeal, petitioners assert that the circuit court erred by failing to properly apply the grandparent preference expressed in West Virginia Code § 49-4-114(a)(3) (2024) and by denying visitation and placement despite the approval by the West Virginia Department of Human Services ("DHS")[2] of their home study. The DHS, guardian ad litem, and intervenor foster parents, K.B. and M.B. (the "foster parents") argue that the record evidence on the whole supports the circuit court's placement determination.

This Court has carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we conclude that the circuit court's order fails to reflect a consideration of the grandparent preference contained in West Virginia Code § 49-4-114(a)(3). As a result, the order lacks the findings of fact and conclusions of law required to substantiate a determination, based on the record

---

[1] We use initials where necessary to protect the identities of those involved. *See* W. Va. R. App. P. 40(e).

[2] Pursuant to West Virginia Code § 5F-2-1a (2024), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2 (2024). For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS") and is referred to as the DHS for the purposes of this opinion.

1

in its entirety, that the grandparent preference was overcome by A.F.'s best interests. We therefore vacate the circuit court's order and remand the case for further proceedings and entry of a new order consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In July 2021, the DHS filed the instant abuse and neglect petition alleging that A.F.'s mother ("the mother") physically abused a nine-year-old neighbor ("the neighbor child"). According to the petition, over the course of two hours during a party in a public park, the mother led the neighbor child around by a belt fastened to his wrists and "kept smacking him with the belt." The neighbor child and other witnesses informed the DHS that several other adults, including petitioner R.F., participated in the abuse. Although R.F. was not named as a respondent in the instant abuse and neglect proceeding, the DHS substantiated a maltreatment finding against him based on the events described in the underlying petition.

The underlying petition also referenced a 2017 abuse and neglect proceeding involving the mother that resulted in then-thirteen-month-old A.F. being removed from her custody due to "deplorable conditions" of A.F.'s home—a home A.F. shared with both the mother and petitioners. According to the DHS, there were "dog feces on the floor and trash everywhere" at the time A.F. was removed. Even though petitioners were not named as respondents to the 2017 abuse and neglect case against the mother, the DHS opined that they "were part of the problem of [the] dirty home." Upon removal from the mother in

2

2017, A.F. was placed with the foster parents. When she was removed pursuant to the instant petition, she was again placed with the foster parents. The mother's parental rights to A.F were terminated in July 2022.[3] *See In re A.F.*, No. 22-687, 2023 WL 6144929 (W. Va. Sept. 20, 2023) (memorandum decision) (affirming termination of the mother's parental rights).

Shortly after the mother's parental rights were terminated—in July 2022 and one year after the underlying petition was filed—petitioners moved to intervene and obtain custody of and visitation with A.F. At an August 2022 hearing, the circuit court granted petitioners' motion to intervene, and they moved for visitation with A.F. pending the court's decision on their motion for custody. The DHS opposed petitioners' motion for visitation, arguing that petitioner R.F. was "involved with some of the incidents that took place" leading to the 2021 petition against the mother and that he had "been substantiated upon in the past for inadequate housing." Further, the DHS informed the circuit court of a 2005 maltreatment substantiation against petitioner R.F. involving the mother (who was a minor at the time) for "inadequate or dangerous shelter . . . due to [R.F.'s] drinking and [d]omestic violence." The circuit court did not issue a ruling on petitioners' motion for visitation or custody during the August 2022 hearing but directed the DHS to provide petitioners with an expedited home study.

---

[3] A.F.'s father's parental rights were terminated in a previous proceeding.

In October 2022, the DHS filed a report with the circuit court advising that petitioners' home study was "denied" based on the 2005 and 2021 DHS maltreatment substantiations against petitioner R.F.[4]  After the home study was denied, petitioner R.F. filed an administrative appeal with the DHS's Board of Review ("Board of Review") challenging the 2005 and 2021 maltreatment substantiations against him.  Following a March 2023 evidentiary hearing, on April 14, 2023, the Board of Review issued an order reversing both of the prior maltreatment substantiations, finding that they were "incorrectly determined."  More specifically, the Board of Review determined that the DHS "did not prove by a preponderance of evidence that [the then-minor mother] was maltreated in 2005 or that [the neighbor child] or A.F. were physically, mentally, or emotionally injured by [petitioner R.F.] in 2021."[5]  The Board of Review also remanded petitioners' denied home study to the DHS for "review and a redetermination."

Contemporaneous with the pending administrative appeal, the circuit court conducted hearings regarding petitioners' motion for visitation.  In an April 2023, hearing,

---

[4] A subsequent DHS "Kinship/Relative Safety Screen" report, completed in November 2022, similarly noted concerns over petitioners' fitness for relative guardianship, given R.F.'s prior maltreatment substantiations and A.F.'s removal from petitioners' home in 2017 due to its "deplorable conditions."  The report also described how the petitioner P.F. "told [a DHS] worker numerous times" that the foster mother and DHS "conspire against [petitioners]" to let A.F. remain with the foster parents and that this alleged conspiracy "is why [A.F.] was removed from her home the second time."

[5] Importantly, the removal of these maltreatment substantiations from 2005 and 2021 did not address the issues surrounding the 2017 abuse and neglect petition against the mother for deplorable conditions involving petitioners' home; as previously noted, for reasons not clear from the record, petitioners were neither made respondents to that action nor does the record reflect any DHS investigation against them.

4

the circuit court heard testimony from a Court Appointed Special Advocate ("CASA"), who objected to any form of visitation, testifying that A.F. referred to the foster parents' home as "her home" and that A.F. was "in denial that she has ever had any past life prior to living with" the foster parents. The guardian ad litem and the DHS joined the CASA's objections to petitioners' motion for visitation. The circuit court denied visitation at that time but scheduled a May 2023 evidentiary hearing for further consideration of the motion.

At the May 2023 evidentiary hearing, petitioner P.F. provided detailed testimony on her relationship with A.F. prior to the 2021 removal, emphasizing that A.F. resided with petitioners for a significant period of time during which they cared for her on a daily basis. Concerning A.F.'s removal from petitioners' home in 2017, petitioner P.F. claimed that the home "wasn't that bad," and that "[t]he only thing that was really wrong with [the] house is that [they] were changing out rooms and stuff" and had clothes lying on the stairs; she blamed the dog feces on her niece who was dog-sitting and failed to take the dogs out.[6] Petitioner P.F. further testified regarding completion of trauma certifications and kinship placement courses required by the DHS, and that A.F. would have her own room and plenty of food, clothes, and toys, if placed with petitioners. Petitioner R.F. testified that he did not recognize photos the DHS introduced into evidence depicting the condition of petitioners' home in 2017 and echoed petitioner P.F.'s explanations for the

---

[6] The appendix record, however, reveals that additional safety concerns were raised including cockroaches crawling out of the mother's diaper bag, A.F.'s lice infestation, and bruising on her leg.

condition of their home at that time. Petitioner R.F. further testified that the prior maltreatment substantiations against him had been "cleared" by the Board of Review and denied committing any abusive acts at the party described in the underlying petition against the mother. A.F.'s foster mother, M.B., testified that A.F. had been placed in her home twice, for a total of around three years, and that A.F. no longer spoke of her biological family or expressed a desire to see petitioners. M.B. further testified that after living with the mother and/or petitioners, upon being placed in her care, A.F. demonstrated developmental delays.

Toward the end of the hearing, the circuit court inquired of petitioners' counsel as to whether a "grandparent statute" was implicated after the mother's parental rights were terminated:

> THE COURT: . . . . Now let me ask you, once [the mother's] parental rights were terminated, does -- is there a grandparent statute that kicks in? Did you find anything on that? I know that law has been changed so many times, the so called grandparent visitation statute, which --okay.
>
> MR. MUNOZ: I wasn't prepared to argue that today, Judge. If the [c]ourt would like us to submit findings of fact, conclusions of law, we'd be happy to do that.
>
> THE COURT: Of course [§]49-4-114, you have to consider the grandparents but that doesn't mean they're going to be placed there. Of course that's what we're doing. But of course the child has a three year history with the foster parents, which is almost half her life with the foster parents. . . . I know custody's going to be in the best interest of the child.[7]

---

[7] This was the only instance when the circuit court acknowledged the existence of the grandparent preference statute during the underlying proceedings. *See infra* n.12.

6

(footnote added). The circuit court did not rule on petitioners' motion during the May 2023, hearing but instructed the parties to submit briefs and proposed findings of facts and conclusions of law to support their respective positions.

In anticipation of further permanency proceedings, the DHS submitted a July 5, 2023, report recommending that petitioners "not be considered for placement of [A.F.] or to have visitation with [A.F.]," and that the court permit A.F. to be adopted by the foster parents. The report did not mention the Board of Review's order requiring the DHS to repeat petitioners' home study but noted that—of particular concern due to petitioners' history of safety and cleanliness issues—petitioner R.F. had twice refused to allow the DHS and the CASA inside the home when they attempted to conduct unannounced visits. Nonetheless, by letter dated July 31, 2023, petitioners were notified that, upon DHS's reconsideration of their home study as ordered by the Board of Review, they had "been approved as foster parents . . . for [A.F.] . . . effective 7-11-2023." Despite this approval, an addendum to the home study provided that the "concerns noted in the initial home study regarding the CPS referral [in 2017] . . . remain." The addendum further noted petitioner R.F.'s refusal to allow a CPS worker into the home during an unannounced visit.

In October 2023, the circuit court conducted a permanent placement review hearing during which it considered petitioners' outstanding motions for visitation and custody. Notwithstanding petitioners' approved home study, the DHS—joined by the guardian ad litem and foster parents—argued that A.F.'s permanency plan should be

7

adoption by her foster parents, with whom she was reportedly thriving. The circuit court then orally denied petitioners' motions, stating that the foster parents were "unquestionably the best people" to provide A.F. with "continuity of care" in a "permanent, stable, and safe environment[,]" and pointing to the extended period A.F. had resided with the foster parents. The circuit court also noted concerns over petitioners' DHS history and opined that there was no longer any connection or bond between A.F. and petitioners.

In its subsequent November 8, 2023, order denying petitioners' motions for custody and visitation, the court found that A.F. was in her second removal and had been placed with the foster parents both times, concluding that the foster parents were, in essence, A.F.'s family. The circuit court further found that petitioners "made their motion late[,]" and cited A.F.'s need for continuity in care and caretakers. The order provides that "it [was] not in the best interest of [A.F.] to *visit* with [petitioners]" because "[t]here [did] not seem to be any connection or bond, and [A.F. did] not ask to see them." (Emphasis added). It is from this order that petitioners appeal.

## II. STANDARD OF REVIEW

In general, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996). Moreover, "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its

8

action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). As with all decisions concerning the child involved in an abuse and neglect case, "[i]n . . . custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996). With these standards in mind, we consider the parties' arguments.

## III. DISCUSSION

In this appeal, petitioners assert that the circuit court erred by failing to provide them the benefit of the grandparent preference contained in West Virginia Code § 49-4-114(a)(3), resulting in the denial of their motions for visitation[8] and custody. In response the DHS asserts petitioners cannot demonstrate that the circuit court abused its discretion in denying petitioners' motions, given their "role" in A.F.'s removals and her bond and developmental improvements while with the foster parents. The guardian ad litem and foster parents largely echo the DHS's position, arguing that the "record reviewed

---

[8] Although petitioners assign as error the circuit court's denial of their motion for visitation with A.F., their brief fails to address the Grandparent Visitation Act, West Virginia Code §§ 48-10-401 to 48-10-403, Rule 15 of the Rules of Procedures for Child Abuse and Neglect, or any other applicable legal authority. Because petitioners' assignment of error relating to this issue is inadequately briefed, we decline to address it. *See State v. White*, 228 W. Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 (2011) ("Typically, this Court will not address issues that have not been properly briefed."); *see also State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority[] are not considered on appeal.").

9

in its entirety" demonstrates that the circuit court acted well within its discretion in denying

placement with petitioners, and that "it would be harmful to A.F. to again completely

disrupt her life by changing her placement and primary caretakers."

The grandparent preference statute, enacted nearly three decades ago,[9] refers

to the following language in West Virginia Code § 49-4-114(a)(3):

> (3) For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents. A circuit judge may determine the placement of a child for adoption by a grandparent or grandparents is in the best interest of the child without the grandparent or grandparents completing or passing a home study evaluation.

---

[9] The grandparent preference statute was first adopted during the 1997 Regular Session of the West Virginia Legislature. *See* 1997 W. Va. Acts ch. 2 (S.B. 61). The grandparent preference originally appeared in West Virginia Code § 49-3-1 but was relocated to its current location in West Virginia Code § 49-4-114 in 2015 when the Legislature renumbered all statutory provisions on child welfare. *See* 2015 W. Va. Acts ch. 46 (H.B. 2200). During the 2023 Regular Session, the Legislature authorized the circuit court to waive the requirement that grandparents pass a home study prior to serving as an adoptive placement for a removed grandchild. *See* 2023 W. Va. Acts ch. 63 (H.B. 2875). The statutory language creating the grandparent preference has otherwise changed very little since its initial enactment in 1997.

This Court has expounded upon the operation of this grandparent preference for purposes of the circuit court's determination of placement:

> West Virginia Code § [49-4-114(a)(3)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the [DHS] find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. *The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.*

Syl. Pt. 4, *Napoleon S. v. Walker,* 217 W. Va. 254, 256, 617 S.E.2d 801, 803 (2005) (emphasis added).

In support of their argument that the circuit court failed to properly apply the grandparent preference, petitioners emphasize that the court's findings in its November 2023, order were "meager" and that it "never technically made a finding that placement with the foster family [was] in the best interests of A.F." Petitioners further contend that DHS's refusal to recommend placement with them "defi[ed]" their own home study and that, upon approval, the DHS was obligated to offer placement. The DHS contends that the circuit court made sufficient findings to support its decision, pointing to comments the court made concerning petitioner R.F.'s DHS history and the condition of petitioners' home in 2017 during the permanent placement review hearing. The DHS further argues

11

more generally that the record as a whole supports the circuit court's placement of A.F. with the foster parents despite petitioners' successful home study.[10]

Upon review, we agree with petitioners that the circuit court's order contains inadequate findings to demonstrate that it properly considered the grandparent preference expressed in West Virginia Code § 49-4-114(a)(3), as required by our caselaw. The order on appeal contains neither a reference to the grandparent preference statute nor any analysis of the presumption afforded therein. Further, while the order generally references that "testimony taken on May 8, 2023" was taken "into account," it contains insufficient findings and conclusions to allow this Court to determine whether—and on what basis— the circuit court found any such preference overcome by the record evidence. Aside from referencing the length of time A.F. had been placed with the foster parents and that she was "thriv[ing]" with them, the order reflects no consideration of facts and circumstances upon

---

[10] Because we vacate the circuit court's order as insufficient to determine whether it properly applied and weighed the grandparent preference and remand for further proceedings, we find it unnecessary to address the incongruency between the DHS's approval of petitioners' home study and its opposition to placement with them. However, we remind the DHS that this Court has made clear that

> [b]y specifying in West Virginia Code § [49-4-114(a)(3) (2015)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by [the DHS] . . . of the best interests of the child, given all circumstances of the case.

*Napoleon S.*, 217 W. Va. at 256, 617 S.E.2d at 803, syl. pt. 5.

12

which the parties, respectively, rely in support of and opposition to the court's placement decision.

This Court has previously reversed a circuit court's order denying a grandmother's request for placement of her grandchild when the court provided "no explanation as to why the grandparent preference had been overcome." *In re P.F.*, 243 W. Va. 569, 577, 848 S.E.2d 826, 834 (2020). Similar to the instant case, the circuit court in *In re P.F.* failed to specify in its order whether or why the grandparent preference was overcome by the child's best interests. *Id.* at 576, 848 S.E.2d at 833. In reversing the circuit court's order and remanding the case for further proceedings, this Court found that the circuit court had failed to adopt "*the mandatory findings* set forth by this Court in syllabus point four of *Napoleon S.*[11]—whether the preference for grandparent placement has been overcome when reviewing the record in its entirety[]" prior to denying the grandmother's request for custody. *Id.* (footnote and emphasis added); *accord In re R.M.*, No. 23-559, 2024 WL 4688795, at *2 (W. Va. Nov. 6, 2024) (memorandum decision) (reversing and remanding denial of grandparent placement that made "no mention of case law and statutes establishing a grandparent preference for placement of a child, the petitioner's approved home study, the petitioner's completion of trauma certifications and kinship placement courses, or the potential connection between R.M. and R.M.'s half-siblings.").

---

[11] *See Napoleon S.*, 217 W. Va. at 261, 617 S.E.2d at 808, syl. pt. 4.

Because the governing statute and our caselaw mandates that the circuit court make specific findings to overcome the grandparent preference, we decline DHS's urging to equate the circuit court's passing comments during the permanent placement review hearing with the requirements of *Napoleon S.* Further, although we acknowledge that "[a]s in all cases involving children, the polar star is the best interests of the child[,]" this principle does not permit a court to ignore the mandatory statutory analysis in determining what best serves the interests of a child. *In re P.F.*, 243 W. Va. at 576, 848 S.E.2d at 833; *see also In re K. S.*, 246 W. Va. 517, 528, 874 S.E.2d 319, 330 (2022) (reversing where "sparse and conclusory" order "fail[ed] to support its required statutory determinations in any meaningful way[]").

To that end, asking this Court to merely intuit a best interests determination into any and all placement decisions that fail to acknowledge the governing statutory standards or detail informative facts would render our review perfunctory. As we have previously explained, "'[c]lear and complete findings by the trial judge are essential to enable us properly to exercise and not exceed our powers of review.'" *In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001) (quoting *Nicpon v. Nicpon*, 157 N.W.2d 464, 467 (Mich. Ct. App. 1968)). In view of the statutory presumption in favor of placement with grandparents expressed in West Virginia Code § 49-4-114(a)(3) and the requirements of syllabus point four of *Napoleon S.*, an order denying placement with suitable grandparents must be sufficiently detailed to permit this Court's appellate review. *See* Syl. Pt. 4, *In re Edward B.*, 210 W. Va. at 624, 558 S.E.2d at 623 (holding orders

14

terminating parental rights and making custodial placements that lack factual findings sufficient to demonstrate statutory compliance are "inadequate"); *In re E.H.*, 247 W. Va. 456, 460, 880 S.E.2d 922, 926 (2022) (reversing dispositional order and remanding for further proceedings where order was "simply too vague" to permit meaningful review). Therefore, we hold that in denying grandparent placement the circuit court must make detailed findings of fact and conclusions of law demonstrating that it considered the grandparent preference in West Virginia Code § 49-4-114(a)(3) and determined, based on the record in its entirety, that the preference was overcome by the best interests of the child.

Accordingly, we find that the circuit court erred by denying petitioners' motion for custody without making adequate findings necessary to demonstrate that it considered the grandparent preference and determined, based on the record in its entirety, that placement with petitioners was contrary to A.F.'s best interests. Finally, because it is unclear from the record and order on appeal whether the circuit court was cognizant of the import of the grandparent preference statute in rendering its decision in this case, we remand with instructions to conduct a new evidentiary hearing that contemplates the analysis required by that statute.[12] *See In re P.F.*, 243 W. Va. at 576, 848 S.E.2d at 833 (reversing due to failure to properly analyze grandparent preference and remanding with

---

[12] As discussed above, we acknowledge that the circuit court vaguely referenced the "grandparent statute" during the May 2023 hearing on petitioners' motion for visitation. However, based on the permanent placement hearing transcript and subsequent order, it is unclear whether the circuit court understood the requirements of the grandparent preference statute and our caselaw in the context of adoptive placement.

15

instructions to hold evidentiary hearing to "address whether placement with Grandmother [was] in the child's best interest.").

## IV. CONCLUSION

For the foregoing reasons, we vacate the November 8, 2023, order of the Circuit Court of Wood County, West Virginia, and remand for further proceedings consistent with this opinion.

Vacated and remanded.