557 S.E.2d 315

Grady Colin KELLEY, Plaintiff
Below, Appellant

v.

TOYOTA, A CORPORATION, Defendant
Below, Appellee

and

Frieda Kelley, Plaintiff Below, Appellant

v.

Toyota, A Corporation, Defendant
Below, Appellee.

Nos. 29337, 29338.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 2001.

Decided Nov. 29, 2001.

C. Michael Sparks, Esq., Williamson, West Virginia, Attorney for Appellants.

Anita R. Casey, Esq., Renatha S. Garner, Esq., MacCorkle, Lavender & Casey, PLLC, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

The appellants in these two cases, Grady Colin Kelley and Frieda Kelley, his wife, instituted actions against Toyota, a corporation, in the Circuit Court of Mingo County.[1] They, however, failed to perfect service of process on Toyota within the time prescribed by the law, and the circuit court, acting pursuant to Rule 4(k) of the West Virginia Rules of Civil Procedure, dismissed the actions for failure to effect timely service. Subsequently, the Kelleys, who claimed that there was good cause for their failure to procure timely service, moved for the court to reconsider the dismissals, and on September 25, 2000, the trial court denied their motions. In the present appeals, the Kelleys claim that there was good cause for their failure to obtain timely service, and they also claim that, under the circumstances, the trial court should have reinstated their actions.

## I.

### FACTS

Grady Colin Kelley and Frieda Kelley, his wife, instituted the proceedings underlying the present appeals by filing complaints with the Clerk of the Circuit Court of Mingo County on May 19, 1999. In their complaints, they alleged that the appellee, Toyota, had sold Grady Colin Kelley a defective and dangerous 1996 Toyota Camry automobile, and that a defective stabilizer bar in the vehicle had caused a single motor vehicle accident which injured Frieda Kelley and which damaged their automobile. They sought damages for Frieda Kelley's personal injuries and for their property loss.

It appears that because Toyota was a nonresident corporation, the attorney for the Kelleys intended to perfect service of the complaints and summonses in the action by having the Clerk of the Circuit Court transmit the complaints and summonses to the Secretary of State. His assistant did, as will later be discussed, request that the Clerk forward the complaints and summonses to the Secretary of State for acceptance of service. His assistant also gave the Clerk a check to cover the cost of the service.

Apparently, after the assistant left the Clerk's office, the Clerk's office mailed the Kelleys' attorney copies of the complaints and summonses. As it later appeared, the Clerk's office apparently did this because the check given by the assistant was inadequate to cover the cost of obtaining service through the Secretary of State's office. However, the mailing by the Clerk's office was not accompanied by an explanation of the problem, and the record suggests that the Kelleys' attorney believed that service had been perfected and that the copies were courtesy copies.

It appears that approximately a year later, the Kelleys' attorney learned that there had been some problem with the service of process and that he made inquiries about the problem. He learned that because two complaints and two actions were involved, two $15 fees were required by the Secretary of State's office, instead of the one $15 fee which had been given to the Clerk's office to be forwarded to the Secretary of State's office. The Kelleys' attorney then immediately corrected the problem and provided the necessary fee to the Secretary of State's office and procured service of process on March 29, 2000.

On April 19, 2000, eleven months after the filing of the complaints, and after service had been made, Toyota moved to dismiss the complaints on the ground that the service had not been effected within 120 days, as is required by Rule 4(k) of the West Virginia Rules of Civil Procedure. The circuit court conducted a hearing on this motion on May 30, 2000. At the hearing, the Kelleys' attorney indicated that the summonses and complaints had been forwarded to the Secretary of State for service immediately after the filing of the complaints on May 19, 1999. He further indicated that his co-counsel has

---

1. The actions were instituted as separate actions, but they grew out of the same set of facts. In one action, Grady Kelley sought property dam-

ages, and in the other action, Frieda Kelley sought damages for personal injuries.

worked diligently with the Secretary of State's office to ensure that service was made but that nothing had ever been done.

At the conclusion of the hearing, the court concluded that good cause had been shown for the failure to effect service of process within 120 days. In reaching this ruling, the court concluded that the statements of the Kelleys' attorney indicated that process had been delivered to the Secretary of State's office and that by making delivery of the process to the office, counsel had done what he was required to do to effect service.

After the court refused to grant the motion to dismiss, Toyota filed a motion to reconsider, and in support of that motion, Toyota submitted an affidavit prepared by a supervisor for the Process Division of the Secretary of State's office. In the affidavit, the supervisor did not directly rebut the statement that counsel for the Kelleys had made efforts to procure service of process, but she did state that she had received the summonses and complaints in the Kelleys' actions on March 22, 2000, as well as a check for $15 and a request by the Kelleys' counsel that service of process be made upon Toyota Motor Sales, USA, Inc. The supervisor, however, indicated that because there were two complaints, two $15 fees were required, and that because she had only received one, she refused to effect service and, instead, notified the Kelleys' attorney that an additional $15 fee would be required. The affidavit stated that the Kelleys' attorney did provide the additional $15 fee, and on March 29, 2000, service was perfected.

An additional hearing was held in the case by the circuit court on June 7, 2000. At the conclusion of that hearing, the court dismissed the action. In deciding to dismiss the action, the court, in effect, disregarded the prior statements by the Kelleys' counsel which indicated that he and co-counsel had timely attempted to procure perfection of process. In making its ruling, the court in essence ruled upon what was in the file itself. The court stated:

> The file speaks for itself. The case was filed, and nothing was done for process to ... issue.... It's not the filing, it's when you actually place those things in the Sher-

iff's office or in the Secretary of State's office, which issued to them, that stops that. And it's clear this was not done in this case until sometime this year, when Mr. Tobin [the Kelleys' attorney] forwarded it.

> The only thing that is reflected is there was a suit filed and it sat there until sometime this year in March when Mr. Tobin sent the papers to the Secretary of State's office. Certainly ... timely service was not effected within 120 days.

After the court ruled that the action should be dismissed, the Kelleys moved to alter the judgment. In support of their motion for alteration, the Kelleys presented an affidavit from Grady Colin Kelley. In that affidavit, Mr. Kelley indicated that he had attempted to obtain the service of process at the time of the filing of the complaints, and stated under oath that on May 19, 1999, the Office of the Circuit Clerk of Mingo County had been paid to cover the filing fees and service of process fees in the two cases.

After the filing of that affidavit, the court set another hearing for September 25, 2000. At that hearing, Brenda Hunt, who worked in the Mingo County Circuit Clerk's Office, testified that at about 4:25 p.m. on the day the complaints were filed, an employee of the Kelleys' attorney arrived with the papers in the cases. Ms. Hunt testified that only the $75 filing fee was paid for each complaint and that she advised the employee that in order to forward the summonses and complaints to the Secretary of State for perfection of service, a $15 service fee would be required for each action to be paid by check or money order payable to the Secretary of State. The clear implication of her testimony being that a separate $15 service fee was not paid for each action.

At the conclusion of the hearing, the circuit court denied the Kelleys' motion for reconsideration of the dismissal of the case and finalized the dismissal.

In the present proceeding, the Kelleys claim that the court erred in dismissing the case.

## II.

### STANDARD OF REVIEW

In Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), the Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

## III.

### DISCUSSION

Rule 4 of the West Virginia Rules of Civil Procedure governs service of process in this State. It provides, in relevant part:

(k) *Time Limit for Service.*—If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effective within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

In *State ex rel. Charleston Area Medical Center, Inc. v. Kaufman,* 197 W.Va. 282, 475 S.E.2d 374 (1996), the Court held that a dismissal under the Rules of Civil Procedure is ordinarily mandatory where a plaintiff fails to perfect service of process within the time provided by the rules. However, the Court also recognized that dismissal is not mandatory where the plaintiff shows good cause for not having effected service of the summons and complaint in a timely manner.

In the present cases, the Kelleys' attorney argues that he made a good faith effort to perfect service of process. Specifically, he claims that a fee for service was timely submitted to the Circuit Clerk's Office with the understanding that it would be forwarded to the Secretary of State's Office. He indicates that that fee was accepted by the Circuit Clerk and that he was not, in a timely fashion, notified that the fee was inadequate. He argues that these circumstances constitute good cause for the failure to perfect timely service.

After reviewing the record in this case, this Court finds that it rather plainly shows that the Kelleys' attorney or his assistant requested that service of process be made at the time the complaints were filed and that the Clerk's office was paid a substantial amount at the time the complaints were filed. This payment was apparently accepted at that time by the Clerk's office. The fact that the Clerk's office subsequently mailed the Kelleys' attorney a copy of the complaint and summons, without any explanation and without any notice that the fee paid was inadequate, was not sufficient in this Court's view, to notify the Kelleys' attorney that there was a defect in service. Further, when the Kelleys' attorney later learned that there might be a defect, he promptly moved to correct the problem.

The Court believes the facts do show good cause for the failure of the Kelleys' attorney to effect service of process in a timely manner. If he, or his assistant, had not requested service at the time the complaints were filed, if he had not proffered a fee at that time, or if the Clerk's office had, at the that time, refused the proffered fee or plainly indicated that it was inadequate, this Court would reach a different decision, but it appears that what happened is that the Kelleys' attorney was misled by the fact that the proffered fee was accepted.

The Court believes that the Kelleys' attorney showed good cause within the meaning of *State ex rel. Charleston Area Medical Center v. Kaufman, id.,* for failing to perfect service of process within a timely manner, and the Court believes that the circuit court erred in dismissing the Kelleys' actions.

The judgments of the Circuit Court of Mingo County are, therefore, reversed, and these cases are remanded for further development.

Reversed and remanded.