**STATE OF WEST VIRGINIA**
**IN THE SUPREME COURT OF APPEALS**

**FILED**

**May 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: C.J., M.M., and M.M.**

**No. 13-1091 (Raleigh County 11-JA-202, 11-JA-203, and 11-JA-204)**

**MEMORANDUM DECISION**

The joint petitioners herein, the guardian *ad litem* (hereinafter "Guardian") for the minor children and the intervening third-party care giver (hereinafter "Intervenor"), appeal from an order entered September 24, 2013, by the Circuit Court of Raleigh County. By that order, the circuit court returned physical and legal custody of the minor children, C.J.; M.M.; and M.M.,[1] to their mother pursuant to a gradual transition plan. In their joint appeal to this Court, the Guardian and the Intervenor argue that the circuit court failed to consider the best interests of the children, and, in doing so, disregarded expert testimony and failed to consider the lack of a bond between the children and their mother. Likewise, the Department of Health and Human Resources (hereinafter "DHHR") submits that the lower court failed to consider the best interests of the children. Based on the parties' briefs,[2] the appendix record designated for our consideration, and the pertinent authorities, we find that the circuit court erred. We reverse the rulings made by the lower court regarding the children at issue herein and, further, remand this case for entry of an order in accordance with this

---

[1]"We follow our past practice in juvenile . . . cases which involve sensitive facts and do not utilize the . . . names of the parties." *State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2]On March 25, 2014, this Court ordered the mother to file a responsive brief on or before April 25, 2014. Further, the order provided that "[c]ounsel for the respondent T.M., David S. Hart, is reminded that failure to file a brief may result in sanctions being imposed." Contrary to this Court's instructions and Rule 38(f) of the Rules of Appellate Procedure, which provides: "No documents shall be filed less than forty-eight hours prior to a scheduled argument in a proceeding unless specifically requested by the Court[,]" no brief was filed until counsel for T.M. attempted to file a brief on May 7, 2014, immediately prior to oral arguments. Counsel appeared for oral argument and this Court, in its discretion, allowed T.M.'s counsel to be heard.

decision. This case presents no new or significant questions of law, and, furthermore, satisfies the "limited circumstance" requirement of Rule 21(d) for the Court to issue a memorandum decision rather than an opinion in this case.

While the underlying abuse and neglect proceeding concerned four children, this appeal involves only three of the children: C.J., M.M., and M.M.[3] This case commenced on September 28, 2011, with the DHHR's filing of a petition alleging that the children were abused by their mother, T.M. (hereinafter "Mother"). The petition resulted from an incident in which Mother was arrested for driving under the influence of alcohol (hereinafter "DUI") with the eldest child present in the vehicle. Upon her arrest, Mother failed to identify a substitute caretaker for the eldest child; thus, Child Protective Services (hereinafter "CPS") was contacted, and the child was placed in foster care. Mother was incarcerated and charged with DUI, second offense; child endangerment; a child seat belt violation; and obstructing a police officer.

It was learned that Mother had three other children, all younger than the child who was with her at the time of her DUI arrest. The DHHR filed an amended abuse and neglect petition alleging that Mother had abandoned the three children who were not present at the time of her arrest. CPS also began an investigation into the other children's whereabouts and eventually learned that the twins, M.M. and M.M., were living with an unrelated third-party care giver, who is the co-petitioning Intervenor in this appeal. Another child, C.J., was discovered residing with yet a different, unrelated, third-party care giver.[4]

Thereafter, on December 1, 2011, the circuit court held an adjudicatory hearing during which Mother stipulated to neglecting the children by abusing alcohol and was granted a post-adjudicatory improvement period. After successfully completing the improvement period, Mother was reunited with the eldest child who was present in the car when she was arrested for DUI. The matter as to the other three children was scheduled for disposition.

The dispositional hearings were held on October 26, 2012; January 10, 2013; April 26, 2013; and July 8, 2013. According to the dispositional order, "[t]he record reflects

---

[3]The eldest child, also with the initials M.M., was returned to Mother's custody after the DHHR dismissed the child abuse and neglect case pertaining to M.M. Accordingly, the eldest M.M. is not subject to this appeal.

[4]C.J.'s third-party care giver did not appeal the circuit court's disposition order; however, the Guardian and the DHHR argue that the disposition of the three children, which includes C.J., was in error.

a wide array of testimony as to [Mother's] parental involvement with her four (4) biological children." It is undisputed that Mother was the sole caretaker for her oldest child whose custody was returned to her. However, the testimony revealed that Mother had limited contact with her other three children.

C.J.'s care giver testified that she met Mother through a mutual friend, who had asked her if she would care for C.J. The care giver agreed, and Mother placed C.J. in the third-party's care when he was about eight months old.[5] According to the testimony, Mother would sometimes take C.J. for overnight visits, usually once or twice each month, and she would occasionally visit the child or call to check on C.J. However, it was undisputed that the third-party care giver was the sole provider for the child and that Mother had never provided formula, diapers, or any clothing. Moreover, it was stated that C.J. refers to the third-party care giver as "mommy" and that the child does not have a parent-child relationship with Mother.

At the time Mother placed C.J. with the third-party care giver, Mother was pregnant with twins: M.M. and M.M. The Intervenor alleged that Mother agreed to let her adopt the twins prior to their birth; however, Mother disputed this contention. The Intervenor claimed that she has had custody of the children since they were three weeks old, while evidence from Mother and maternal grandmother indicated that Mother cared for the twins until they were at least three months old. Regardless of the exact time period when the twins came to be in the Intervenor's care,[6] the testimony showed that the twins recognize the intervenor as their mother and recognize the intervenor's fiancé as their father.

While both the third-party care giver and the Intervenor contended that they perceived that the placement of the children in their care was to be permanent, Mother testified that the agreements with these women to care for her children were intended to be only temporary. The circuit court's decision to return the children to Mother's custody relied heavily on a temporary custody agreement that was executed in 2009 between Mother and the Intervenor. The purported intent of the custody agreement was to allow the Intervenor to seek medical care on behalf of the twins. The agreement specifically stated that it was "not intended to take away from [Mother] legal custody of [the twins], jointly or individually." The circuit court found that, "from the plain language of the temporary

---

[5]At the time of the final dispositional hearing, C.J. had been residing with the third-party care giver for over four and one-half years.

[6]The twins had resided with the Intervenor for at least three years when the dispositional hearings took place.

3

custody agreement, [Mother] signed a document that clearly contemplated a temporary arrangement with [the Intervenor], one that could be revoked at any time . . . ."

During the pendency of the abuse and neglect proceedings, the DHHR was vested with legal and physical custody of the children. The children's physical placements remained with the third-party care giver and the Intervenor. The mother exercised visitation with the children once per week from November 3, 2011, through March 28, 2012. The DHHR, however, suspended the visitation due to concerns regarding a lack of bonding between the children and Mother. Visitation was resumed on May 18, 2012, after it was determined that the visitation had been discontinued arbitrarily.

While Mother raised concerns regarding whether appropriate care was being provided to the children by their care givers, the DHHR inspected both the third-party care giver's home and the home of the Intervenor and found them to be appropriate placements. Mother, during the abuse and neglect proceedings, requested the return of all of her children to her care. It was noted by the circuit court that the abuse and neglect petition had been filed as a result of Mother's DUI. The circuit court found that, since the arrest, Mother "successfully completed an improvement period; passed random drug and alcohol testing; and had her child, [M.M., the eldest child who was in the car when she was arrested], returned to her care and custody." The DHHR argued below that, while the eldest child was properly returned to Mother at the end of the improvement period, the other three children had been abandoned by Mother prior to the filing of the petition and, consequently, should not be returned to her care. Upon considering all of the evidence, the circuit court found that Mother "did not legally abandon the children[.]" Importantly, the lower court's order further determined that Mother "successfully completed the essential components of a post-adjudicatory improvement period as to the children . . . . The court finds that legal and physical custody of the aforementioned children must therefore be returned to [Mother]." The trial court ordered that the children be transitioned to Mother's custody on a gradual basis.[7]

Generally, "'[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*' Syl. Pt. 4, *Burgess v. Porterfield,* 196 W. Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005). Specifically, in considering the proper

---

[7]During the pendency of this appeal, C.J. continued to reside with his third-party care giver, and M.M. and M.M. stayed with the Intervenor. The biological fathers' rights to all of the children have been terminated and are not subject to this appeal.

placement for children, we are reminded that "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). Mindful of these applicable standards, we will consider the parties' arguments.

On appeal to this Court, the Guardian and the Intervenor jointly assert that the circuit court erred in returning the custody of the three children to Mother. The DHHR concurs with the contention that the circuit court erred. The focus of the arguments to this Court is that the circuit court failed to consider the children's best interests.

It is conceded that Mother successfully completed her post-dispositional improvement period. Indeed, she regained custody of the child who was in her physical custody at the time of her DUI arrest. However, there is a discrepancy between the interaction Mother had with her oldest child, who was under her daily care, and the limited contact she had with her three younger children, who she had placed with third-party care givers. These three younger children are the children at issue before this Court.

The circuit court focused on Mother's successful completion of her improvement period to find that it must, therefore, return the custody of the three younger children to her. While we applaud Mother's correction of her substance abuse issues, our review is not limited to Mother's success or failure with respect to the offered services. As we have stated, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). Moreover, this Court has instructed that,

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and *whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child*.

Syl. pt. 6, *In the Interest of Carlita B.,* 185 W. Va. 613, 408 S.E.2d 365 (1991) (emphasis added). Significantly, when recently confronted with this issue, this Court reiterated that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision

5

remains the best interests of the child." Syl. pt. 4, *In re B.H.*, __ W. Va. __, __ S.E.2d __ (No. 13-0342  Feb. 5, 2014).

In the present case, the three younger children were in a decidedly different position than the older child.  The older child had been in Mother's physical custody prior to the filing of the abuse and neglect petition and had formed a bond with her.  Conversely, the three younger children were not under the care of Mother at the time of the filing of the petition.  The expert testimony established that Mother had not bonded with her three youngest children.  Specifically, the psychologist determined that it was not in the children's best interests to be returned to their biological mother.  According to the expert's opinion, the children's care givers were their psychological parents, and the children should remain in their care.  Moreover, the psychologist opined that the lack of bonding severely impacted Mother's ability to parent the children.

In reviewing the record before us, it is clear that the circuit court focused on Mother's successful improvement period to find that it must return custody of the younger children to Mother.  The circuit court elevated Mother's successful improvement period over the best interests of the children and, consequently, disregarded the polar star by which it was to be guided.  As such, the circuit court's decision to return the children to Mother completely disregarded the conclusive expert opinion and ignored the vast testimony regarding the children's lack of a bond with Mother and their apparent distress in visitation situations with her.

For the foregoing reasons, the Circuit Court of Raleigh County's September 24, 2013, disposition order is reversed, and this case is remanded for entry of an order consistent with this Court's opinion.

Reversed and Remanded.

**ISSUED:**  May 27, 2014

**CONCURRED IN BY:**
Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTED IN BY:**
Justice Menis E. Ketchum

6

Justice Ketchum, dissenting:

I believe the circuit judge was correct in ordering the reunification of the mother with her children after the mother's successful completion of her improvement period. The mother did everything requested by the court in her quest to retain her children. Moreover, the order directs that reunification is conditional upon oversight and reporting by a multidisciplinary team.

The court held multiple hearings and personally observed each witness. Thereafter, the court prepared an excellent 42-page order analyzing the facts. The order contains detailed conclusions of law relating to the court's factual findings. It is clear the circuit judge did not abuse his discretion in returning the children to their mother.

Therefore, I dissent.