IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0653

_____

**FILED**

**May 8, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: DONALD M.

_____

Appeal from the Circuit Court of Mineral County
The Honorable Phil B. Jordan, Jr., Judge
Civil Action No. 12-G-5

REVERSED AND REMANDED

_____

Submitted: April 8, 2014
Filed: May 8, 2014

Timothy M. Sirk, Esq.                    Nicholas T. James, Esq.
Keyser, West Virginia                    Keyser, West Virginia
Counsel for the Petitioner E.D.          Guardian ad litem for Donald M.

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

2.      "Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly." Syllabus Point 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).

3.      Under *W.Va. Code* § 44A-2-1(a) [2009] of the *Guardianship and Conservatorship Act*, jurisdiction lies in the circuit court of either the county in which the protected person resides, or the county in which the protected person has been admitted to a health care or correctional facility.

4.      A conservator appointed under the *Guardianship and Conservatorship Act* is responsible for managing the "estate" of the protected person.

i

Under *W.Va. Code* § 44A-1-4 [2000], the "estate" includes any interest in real property held by the protected person, even if that real property is located in another State.

5. Under *W.Va. Code* § 44A-3-5 [2008] of the *Guardianship and Conservatorship Act*, when a conservator seeks to sell or mortgage an interest in real property owned by a protected person, if the circuit court has jurisdiction of the protected person, then the circuit court has jurisdiction to approve the sale or mortgage of the real estate interest – even if the real estate is located outside the State of West Virginia.

6. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

Justice Ketchum:

In this appeal from the Circuit Court of Mineral County we are asked to examine the power of a conservator for a protected person under the *West Virginia Guardianship and Conservatorship Act*. Specifically, we are asked whether a circuit court has jurisdiction to approve the sale by a conservator of real estate, owned by a protected person who is a West Virginia citizen, which is located outside of West Virginia. In this case, the circuit court refused to give the conservator permission to sell a protected person's real property that is located in Maryland.

As we detail below, we find that a circuit court does have jurisdiction to approve the sale of an interest in real property owned by a protected person, regardless of where the property may be located. Furthermore, we find that the circuit court in this case abused its discretion in denying the conservator permission to sell the protected person's real property. Accordingly, we reverse the circuit court's refusal to grant permission to sell the real property and remand the case for further proceedings.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

Respondent Donald M., who is seventy-nine years old and suffers from dementia, is unable to care for himself. On April 25, 2012, his daughter (petitioner E.D.[1]) filed a petition requesting that she be appointed as both guardian and conservator

---

[1] E.D is one of respondent's four children and—according to the guardian ad litem—is the only child available to care for her elderly father.

1

for her father. Donald M. lives in his home in Mineral County, West Virginia. E.D. lives in Winchester, Virginia, seventy-five miles away (about a ninety-minute drive) from her father's residence. The circuit court appointed a guardian ad litem who, upon finding that Donald M. was not competent, recommended that E.D. be named as her father's guardian and conservator. The court concurred and made the appointment.

On January 16, 2013, acting as Donald M.'s conservator, E.D. filed a motion with the circuit court seeking permission to sell two parcels of Donald M.'s real property: his home in Mineral County, West Virginia, and an undeveloped parcel of land in Allegany County, Maryland. E.D. intended to use the proceeds of the sales either to rent a home for Donald M. near her home in Winchester, Virginia, or, if necessary, to place her father in an assisted living facility in Winchester.

A hearing on the motion to sell the two parcels was held before a mental hygiene commissioner on April 29, 2013. The guardian ad litem told the mental hygiene commissioner that Donald M. (1) was unable to make his own meals even though Donald M. claimed he could; (2) had fallen four times in the last year; (3) sometimes forgets to take his medication; and (4) has a caretaker only two hours a day, six days a week. E.D. drives the 150-mile roundtrip to care for her father on the seventh day. The guardian ad litem concluded that, in the near future, Donald M. would need more care than he is currently receiving and that the additional care could best be provided by his daughter in Virginia. The guardian ad litem recommended that Donald M.'s West Virginia home be put up for sale immediately given that it might take significant time to sell in a down real estate market. The guardian ad litem also said, in part because Donald M. had agreed,

2

that the Maryland property should also be sold. However, the mental hygiene commissioner filed a report recommending that the circuit court deny the sales.

In an order dated May 6, 2013, the circuit court adopted the findings and recommendations of the mental hygiene commissioner and denied E.D.'s motion to sell her father's two properties. Although it believed that the Maryland property "should be sold," the circuit court found that it was "without jurisdiction over the real estate" and, therefore, could not order its sale. The circuit court adopted the commissioner's recommendation that a guardianship/conservatorship proceeding be brought in Maryland "in a court with proper jurisdiction [to order] such sale."

As for Donald M.'s residence in West Virginia, the circuit court ruled it was not in Donald M.'s best interest for the property to be sold "at this time." The court concluded that E.D. (1) had not proven a need to sell the residence; (2) had failed to consider Donald M.'s express desire not to sell the residence; and (3) failed to present evidence showing how a move to Virginia would save money or benefit Donald M.'s health given that his needs are being met at the present time.

E.D. now appeals the circuit court's May 6, 2013, order.

## II.
## ANALYSIS

E.D. asserts that the circuit court erred in two ways. First, she contends that the circuit court erred in its interpretation of the *West Virginia Guardianship and Conservatorship Act* ("the Act"), *W.Va. Code* §§ 44A-1-1 to 44A-5-9. Specifically, she

3

argues the circuit court was wrong in concluding that it had no jurisdiction to approve the sale of Donald M.'s Maryland property, and that only a Maryland court had jurisdiction to allow the sale. Second, E.D. argues that the circuit court abused its discretion when it precluded E.D.'s sale of Donald M.'s West Virginia residence, simply because Donald M. said he did not wish to sell the property. We consider these two arguments in turn.

### A. Jurisdiction to approve the sale of out-of-state property

As we have often said, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). Accordingly, we give the circuit court's ruling that it had no jurisdiction to approve the sale of the Maryland property plenary review.

E.D. was appointed as both guardian and conservator of her father, Donald M., under the *Guardianship and Conservatorship Act*. As a "guardian," she was "a person appointed by the court who is responsible for the personal affairs of a protected person[.]" *W.Va. Code* § 44A-1-4(5) [2000]. As a "conservator," she was "responsible for managing the estate and financial affairs" of her father. *W.Va. Code* § 44A-1-4(1). The instant case centers on E.D.'s powers as a conservator over Donald M.'s "estate,"

4

which involves his "real and personal property or any interest in the property and means anything that may be the subject of ownership." *W.Va. Code* § 44A-1-4(4).

The Act permits a person appointed as a conservator to perform certain acts on behalf of a protected person "without the necessity of seeking prior court authorization[.]" *W.Va. Code* § 44A-3-3 [2012]. These acts include using the "income and principal of the estate as needed for the protected person's support, care, health, and if applicable, habilitation, education or therapeutic needs." *Id.* A conservator may also, without prior court approval, do such things as prudently invest and reinvest estate funds, sell personal property, repair personal or real property, vote stock, or abandon property that is valueless and of "no benefit to the estate[.]" *W.Va. Code* § 44A-3-4(a) [2000].

The Act gives special treatment to real estate. First, the Act only authorizes a conservator, "without prior court authorization," "[t]o collect, hold, and retain assets of the estate, *including land in another state*, and to receive additions to the estate[.]" *W.Va. Code* § 44A-3-4(a)(2) (emphasis added). Second, if a conservator wishes to sell any real estate within a protected person's estate, then the conservator must seek the approval of the circuit court. *W.Va. Code* § 44A-3-5 [2008] states as follows:

> (a) A conservator shall not sell real estate and shall not be authorized to mortgage any real estate without approval of the court.
>
> (b) Following a petition by the conservator for the sale or mortgage of real property, the court or mental hygiene commissioner shall appoint a guardian ad litem and set a hearing on the petition. The conservator shall personally serve the protected person and serve by certified mail all persons entitled to notice pursuant to the original petition at least thirty days prior to the hearing.

5

The circuit court – relying upon the recommendation of the mental hygiene commissioner – concluded that it did not have jurisdiction to approve the sale of the Maryland real estate under *W.Va. Code* § 44A-3-5. We reject this interpretation of the Act.

The Act states that jurisdiction for the appointment of a conservator must be filed "in the county in which the alleged protected person resides or, if an alleged protected person has been admitted to a health care or correctional facility, in the county in which that facility is located." *W.Va. Code* § 44A-2-1(a) [2009]. A conservator "is responsible for managing the estate . . . of a protected person," and the estate includes *any* real property, or any interest in property, *W.Va. Code* § 44A-1-4(1), (4), even if that real property interest is "in another state." *W.Va. Code* § 44A-3-4(a)(2). We read these statutes together and perceive that the Legislature intended for the powers of a conservator to manage or sell real property to extend to *all* such property interests owned by a protected person, whether in this State or another.

In assessing the Act, in general, and specifically *W.Va. Code* § 44A-3-5, we keep in mind that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

6

"Our rules of statutory construction require us to give meaning to all provisions in a statutory scheme, if at all possible." *Community Antenna Serv., Inc. v. Charter Communications VI, LLC*, 227 W.Va. 595, 604, 712 S.E.2d 504, 513 (2011). "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma– Chief Logan No. 4523, Veterans of Foreign Wars*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

Furthermore, statutes are not to be construed in a vacuum, but must be read in the context of the general system of law of which the Legislature intended it to be a part:

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908). In other words, statutes must be read in *pari materia* to ensure that legislative intent is being effected. "Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to

7

assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly." Syllabus Point 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975). *See also*, Syllabus Point 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.").

Under the Act, *W.Va. Code* § 44A-2-1(a), jurisdiction lies in the circuit court of either the county in which the protected person resides, or the county in which the protected person has been admitted to a health care or correctional facility. A conservator appointed under the Act is responsible for managing the "estate" of the protected person. Under *W.Va. Code* § 44A-1-4, the "estate" includes any interest in real property held by the protected person, even if that real property is located in another State. Hence, we hold that under *W.Va. Code* § 44A-3-5, when a conservator seeks to sell or mortgage an interest in real property owned by a protected person, if the circuit court has jurisdiction of the protected person, then the circuit court has jurisdiction to approve the sale or mortgage of the real estate interest – even if the real estate is located outside the State of West Virginia.

Accordingly, we find that the circuit court erred in finding it had no jurisdiction to approve E.D.'s sale of Donald M.'s real property in Maryland under *W.Va. Code* § 44A-3-5.

8

## b. Approval to sell Donald M.'s West Virginia property

Both E.D. and Donald M.'s guardian ad litem assert the circuit court erred in its conclusion that E.D. could not sell her father's West Virginia property because there was no evidence it was in Donald M.'s best interests. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

Both E.D. and the guardian ad litem contend that it is not in Donald M.'s best interest to continue to reside alone in his home. The circuit court has previously found that Donald M. was not competent enough to care for himself when it appointed E.D. as his guardian and conservator. The record shows that Donald M. is alone twenty-two hours a day, and cannot bathe himself, prepare meals, or drive. He has fallen numerous times, and he forgets to take his medication. E.D. states that she respects her father's wish to stay in his home, but as his guardian she has determined it is not in his best interests. As his conservator, she has determined it is not in his best interests to keep his residence.

On this record, we find that the circuit court clearly abused its discretion. As his guardian, E.D. established a need to move her father seventy-five miles to be closer to her residence in Winchester, Virginia, so that she could provide him with care. E.D. demonstrated that Donald M. will be provided with both freedom and continuous care near her home. Once E.D. moves Donald M., there would be no need to maintain

9

the West Virginia property. The record establishes that, as Donald M.'s conservator, E.D. has exercised "reasonable care, diligence and prudence," and that she is "act[ing] in the protected person's best interests" in selling the properties. *W.Va. Code* § 44A-3-3(c).

Accordingly, we must reverse the circuit court's decision preventing the sale of the West Virginia property.

## IV.
## CONCLUSION

The circuit court erred in finding it was without jurisdiction to approve the sale of Donald M.'s Maryland property, and finding it was not in his best interest to sell the West Virginia property. Accordingly, the circuit court's May 6, 2013, order is reversed and the case is remanded to the circuit court for entry of an order properly approving the sale of both properties.

Reversed and Remanded.