# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**In re: H.A., a protected person,**

**FILED**
**April 10, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**No. 22-ICA-40**     (Cir. Ct. McDowell Cnty. No. CC-27-2016-G-8)

## MEMORANDUM DECISION

Petitioner H.A.[1] appeals the July 22, 2022, order of the Circuit Court of McDowell County denying her petition to modify or terminate the court's December 7, 2016, order appointing H.A. a guardian and a conservator. Respondents James Muncy, Sheriff of McDowell County ("Sheriff"), and the West Virginia Department of Health and Human Resources ("Department") each timely filed a response.[2] H.A. did not file a reply. On appeal, H.A. argues, *inter alia*, that based on the evidence presented, the circuit court erred by failing to grant her petition to modify or terminate her current guardianship and conservatorship.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case began on November 16, 2016, when the Department, through its Adult Protective Services division, filed a petition in circuit court seeking the appointment of a guardian and conservator for H.A., who was being hospitalized for mental illness. On November 17, 2016, H.A. was evaluated by psychiatrist Dr. Jeffry Gee, M.D. Dr. Gee diagnosed H.A. with schizophrenia-par type. In his report, Dr. Gee opined that H.A. suffered from a significant psychotic disorder and had poor insight into her illness, which resulted in H.A. being noncompliant with her medication regimen. As a result, Dr. Gee found this caused H.A. to exhibit an increase in symptoms of psychosis, delusions, and paranoia, along with cognitive dysfunction that prohibited H.A. from caring for herself. Dr. Gee concluded that H.A. was a protected person whose needs would be best served in an assisted living facility along with the appointment of a guardian and a conservator.

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] H.A. is represented by Chantel R. Kidd, Esq. The Sheriff is represented by Brittany R. Puckett, Esq. and the Department is represented by Andrew T. Waight, Esq.

On December 15, 2016, the court entered an order appointing the Department as guardian and the Sheriff as conservator of H.A. These appointments have remained unchanged since that time. Since 2016, H.A. has been placed in an assisted living facility by the authority of her guardian, the Department.

Based on the record, this case has been the subject of at least three prior petitions to modify or terminate the guardianship and conservatorship. These petitions were filed in April 2017, January 2018, and March 2019, respectively, and each was denied by the circuit court based on the findings and recommendations of the mental hygiene commissioner.

Regarding the April 2017 petition, H.A. was reevaluated by psychiatrist Dr. Bobby Miller, M.D. on June 27, 2017. Dr. Miller opined that it was clinically in H.A.'s best interest to remain in her current guardianship and conservatorship because historically, H.A. has been unsuccessful with less restrictive alternatives. Dr. Miller found that it was impossible for H.A. to maintain her contact with reality and interact with the public and institutions without periodic, yet predictable, aggressive and/or involuntary psychiatric intervention.

In the subsequent denials in January 2018 and March 2019, the circuit court found that H.A. had failed to put forth any new evidence to show that the expert opinions and recommendations of Dr. Gee and Dr. Miller were no longer valid.

On January 24, 2022, the current petition to modify or terminate the guardianship and conservatorship was filed. The petition sought leave of the court to allow H.A. to live in her own residence with minimal outpatient services or intervention. The petition was based on H.A.'s belief that she possessed sound mental health. She also argued it was in her best interest to reside independently due to the personal financial burden of residential care. This petition was accompanied by a motion for H.A. to undergo a new psychological evaluation, with the specific request that the evaluation be performed by Saar Psychological Group. The circuit court granted the motion for a new evaluation.

On April 7, 2022, H.A. underwent a psychological evaluation with Saar Psychological Group. She was evaluated by licensed psychologists, Dr. Timothy Saar, Ph.D., and Barbara Nelson, M.A. A psychological report detailing the findings of H.A.'s evaluation was completed on April 23, 2022. The findings in the report set forth a DSM-5 diagnosis of unspecified schizophrenia and other psychotic disorder. Based on her evaluation, it was concluded and recommended that:

> It is evident from her behavioral history, the documentation provided for this evaluation and the results of this evaluation, that [H.A.] is experiencing symptoms related to schizophrenia and psychosis. These symptoms impede her ability to gain insight into her deficits, leading to non-compliance with

2

medication and decompensation. While there are no signs of significant cognitive deficits or neurocognitive disorders, such as dementia, her level of cognitive abilities is not the impediment to independent living. [H.A.] appears to possess average intelligence, adaptive skills and knowledge, as well as, adequate focus and memory. Her psychotic symptoms, however, present an imminent danger to her[self] as [H.A.] will act on irrational internal stimuli and bizarre beliefs. As has been demonstrated in the past, she is then unable to perform capable self-care and make appropriate and necessary decisions. Given the results of this evaluation, within a reasonable degree of psychological certainty, [H.A.] requires the continued appointment of a guardian and [a] conservator and placement in a safe and secure environment.

On May 27, 2022, a hearing on the petition was held before the mental hygiene commissioner. At that time, testimony was adduced from three witnesses, as well as H.A. The first witness defined herself professionally as a direct support professional who worked with H.A. on a regular basis on coping skills and other issues related to H.A.'s mental health. This witness testified that she believed H.A. was intelligent and capable of caring for her own daily needs. However, she acknowledged that she had only observed H.A. in a structured setting, and she was unaware of H.A.'s mental health history or diagnoses.

The other two witnesses are spouses who are former employees of the assisted living facility where H.A. resides. They testified that they had developed a close relationship with H.A. through their employment. Likewise, they believed that H.A. had the ability to live in a more independent environment with support services. However, they too acknowledged that they had only observed H.A. in a structured setting. They further testified that after their employment ended, they only interacted with H.A. on one occasion, which resulted in H.A. obtaining a restraining order against them.

In her testimony, H.A. took exception to the findings of Dr. Saar's report regarding her mental health and his recommendations. She firmly believed that she was not suffering from schizophrenia or any other mental disease or defect, and that Dr. Saar's findings were simply wrong. H.A. believed she does not need medication. H.A. stated that she did not need reminders or assistance to remember to do things because she writes herself a copious number of notes. She further testified that she had friends that could provide her transportation for errands and medical appointments. H.A. was adamant that she could live independently. Following the conclusion of H.A.'s testimony, the matter was continued and rescheduled for Dr. Saar to be available to testify.

The matter reconvened on July 1, 2022, for the testimony of Dr. Saar, who was recognized as an expert in the field of psychology. Dr. Saar testified that while H.A.'s testing exhibited the cognitive ability to live independently, more factors must be considered. In this case, Dr. Saar noted that H.A.'s chronic mental illness, which is

schizoaffective, has impacted her life on multiple occasions resulting in the present guardianship and conservatorship. He testified that when H.A. is in a controlled setting and is not influenced by her mental illness, then she has the cognitive ability for self-care. Dr. Saar further opined that even with medication, H.A. has extremely poor insight into her illness, strongly disagrees with her diagnosis, and shows signs that she is still influenced by her prior delusions. Dr. Saar also explained that, as is consistent with about one-third of patients with schizoaffective disorder, H.A.'s condition does not fully respond to medication.

Additionally, Dr. Saar testified that if H.A. were permitted to live independently, she would still require, at a minimum, twelve hours per day of extensive supervision to monitor her personal and residential cleanliness, finances, and medication management. It was Dr. Saar's professional opinion that at the present time, H.A. is exhibiting stability due to her structured environment and medication management. Dr. Saar found that due to a lack of acceptance and insight into her mental illness, a structured environment with regular monitoring was necessary for H.A.'s health, safety, and well-being.

On July 18, 2022, the mental hygiene commissioner filed a written report with detailed findings and recommendations regarding H.A.'s petition with the circuit court. Based on the evidence adduced, it was recommended that the petition be denied. In support, the commissioner concluded that:

> [H.A.] is a protected person who suffers from a significant psychotic disorder, schizophrenia-par type. This disorder causes her to have poor insight into her illness, therefore, any compliance with treatment, without supervision, would be impossible. Without continued treatment, [H.A.]'s mental state would decline resulting in an increase in symptoms of psychosis, delusions[,] and paranoia with cognitive dysfunction. After hearing the testimony of the witnesses, reviewing the court file[,] and reviewing the evaluation reports of [Drs.] Gee, Miller, and Saar, I recommend to the [circuit court] that the [petition] be denied. This recommendation is based upon the fact that there [was] no new evidence presented [to] contradict the findings of the available medical evaluations concluding that [H.A.] suffers from a significant psychotic disorder[,] which causes her to have poor insight into her illness and ultimately requires her to need a [g]uardian and [a] [c]onservator.

On July 22, 2022, the circuit court entered its order adopting the findings and recommendations of the mental hygiene commissioner and denying the petition. To that end, the circuit court's order concluded that H.A. had failed to present any new evidence to contradict the medical evaluations of Drs. Gee, Miller, and Saar that she suffers from a significant psychotic disorder with a poor prognosis. Given these conclusions, the circuit

4

court found that H.A. continues to be a protected person, who requires a guardian and a conservator. This appeal followed.

In this appeal, we use the same standard of review applied by our Supreme Court of Appeals when reviewing circuit court orders in adult guardianship and conservatorship cases:

> This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.

Syl. Pt. 6, *In re Donald M.*, 233 W. Va. 416, 758 S.E.2d 769 (2014) (citing Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996)).

A petition to modify or terminate guardian and conservator appointments is governed by the West Virginia Guardianship and Conservatorship Act, West Virginia Code § 44A-4-6 (1994). Of import is subsection (b), which provides:

> (b) Upon petition by the protected person, by the guardian or conservator, by any other interested person, or upon the motion of the court, the court may terminate a guardianship, conservatorship, or both, or modify the type of appointment or the areas of protection, management or assistance previously granted. Such termination, revocation or modification may be ordered if:
> (1) The protected person is no longer in need of the assistance or protection of a guardian or conservator;
> (2) The extent of protection, management or assistance previously granted is either excessive or insufficient considering the current need therefor;
> (3) The protected person's understanding or capacity to manage the estate and financial affairs or to provide for his or her health, care or safety has so changed as to warrant such action;
> (4) No suitable guardian or conservator can be secured who is willing to exercise the assigned duties; or
> (5) It is otherwise in the best interest of the protected person.

*Id.* Further, West Virginia Code § 44A-2-10(c) (2000) provides that "[a] guardianship or conservatorship appointed under this article shall be the least restrictive possible, and the powers shall not extend beyond what is absolutely necessary for the protection of the individual."

On appeal, H.A.'s argument is two-fold, and we will address each *seriatim*. First, she argues that the circuit court abused its discretion by ignoring the testimony of her first three witnesses when it determined that no new evidence had been presented to warrant a

modification or termination of the circuit court's prior order. In support, H.A. argues that these individuals had extensive, personal experience working with H.A. over several years, and therefore were best suited to offer opinions regarding H.A.'s ability to live independently. We disagree.

The record is devoid of any development regarding these witnesses' credentials, education, and/or licensure, if any. For example, while one witness defined herself professionally as a "direct support professional," there was little testimony in the record about what her position's duties and responsibilities specifically entailed. Likewise, there is nothing in the record as to what jobs the remaining two witnesses performed at the facility, nor was the record developed as to their educations or backgrounds. Moreover, these witnesses collectively admitted they had only observed H.A. in a structured setting, possessed minimal insight about H.A.'s mental health, and offered no evidence to contest the evaluations of record regarding the prognosis for H.A.'s mental illness. As such, we find no error in the circuit court's conclusion that H.A. failed to produce new evidence to rebut the multiple expert opinions that H.A. lacked the capacity to function independently outside of a structured residential setting.

Second, H.A. argues that the circuit court abused its discretion by ignoring Dr. Saar's testimony that H.A. could live independently. Here, it is argued that Dr. Saar's testimony established that if H.A. consistently took her medication, she would have the ability to live independently. Thus, H.A. asserts that with outpatient services to monitor her medication compliance, there should be no restriction to her ability to live on her own. Upon review, we find this argument misrepresents and fails to consider the totality of Dr. Saar's testimony.

As noted above, Dr. Saar testified that H.A.'s cognitive testing illustrated that she had the intellectual ability to live on her own. However, he elaborated that H.A.'s cognitive ability alone was not the impediment to her living independently. Dr. Saar further testified that H.A. was in denial about the severity of her mental illness, and that despite medication, H.A. remains influenced by her prior delusions. Likewise, he opined that H.A.'s current signs of stability were a product of the structure and supervision she presently receives in residential placement. Therefore, Dr. Saar determined that due to the schizoaffective nature of H.A.'s chronic mental illness, which is not fully controlled by medication, her interests were best served by her continued residential placement under the existing guardianship and conservatorship.

Thus, contrary to H.A.'s argument, it is clear to this Court that Dr. Saar believed, within a reasonable degree of psychological certainty, that H.A.'s well-documented mental illness prevents her from living independently or free from the appointment of a guardian and a conservator. We further find that Dr. Saar's opinions are consistent with the prior opinions of Drs. Gee and Miller, and are uncontroverted. Therefore, we find the circuit court properly considered the expert opinion of Dr. Saar in this case.

Based on the foregoing, we find that the circuit court did not abuse its discretion in denying H.A.'s underlying petition. The record clearly shows that H.A. failed to establish that she no longer required the protections of her existing guardianship and conservatorship, nor did H.A. establish there was a less restrictive alternative to protect her health, safety, and welfare, and to promote her best interests other than her continued residential placement.

Accordingly, we affirm the circuit court's July 22, 2022, order.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

7