IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

IN RE: E.J.M., A PROTECTED PERSON,

No. 23-ICA-92      (Cir. Ct. Cabell Cnty. No. 21-G-23)

FILED
April 22, 2024

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mary M. appeals the February 17, 2023, "Order Regarding Petition to Terminate, Revoke or Modify Appointment of Guardian And/Or Conservator" from the Cabell County Circuit Court granting the recommendation of the mental hygiene commissioner to restrict Mary M.'s access to monitor her mother's financial accounts.[1] Respondent Steve M., the husband and guardian/conservator of E.J.M., filed a timely response.[2] Mary M. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises out of a guardianship/conservatorship that was initiated by Mary M. in May 2021 when she filed a petition requesting that her mother, E.J.M., be declared a protected person and that she be appointed guardian/conservator. At an October 27, 2021, hearing, the mental hygiene commissioner found that E.J.M. met the definition of a protected person, but appointed E.J.M.'s husband, Steve M., as her guardian/conservator. Mary M. was granted access to review E.J.M.'s bank statements. That order was adopted by the circuit court on November 12, 2021.

In January 2023, Steve M. filed a petition to modify the guardianship/conservatorship order seeking to remove Mary M. as an overseer of her mother's financial accounts. At the hearing on February 15, 2023, Steve M. testified that Mary M. called him every time he spent any money on behalf of E.J.M., complaining about

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Mary M. and Steve M. are both self-represented. Guardian ad litem for E.J.M. Randall D. Wall, Esq., did not participate in this appeal.

the expense and threatening to call the guardian ad litem. Steve M. testified that he only spent E.J.M.'s money for her benefit and necessary household expenses. He testified that while he made purchases using E.J.M.'s credit cards, it was solely for necessary expenses, including a refrigerator for their home and to replace ventilation ductwork as part of an urgent heating repair. Steve M. testified that he had no other means of affording these expenses, but that he was splitting the cost of paying the charges down with E.J.M. The guardian ad litem testified at the hearing that he had reviewed Steve M.'s accounting of the expenses and found that they appeared to be normal living expenses that did not concern him.

During the hearing, the mental hygiene commissioner agreed that it appeared that Mary M. was "nitpicking" over the expenses Steve M. was claiming in taking care of E.J.M. and noted that E.J.M. had a place to live and food to eat and that all those necessities cost money. Mary M. testified that she found it unfair that E.J.M. was paying half of the expenses of Steve M.'s home, maintenance, repairs, and insurance, when E.J.M.'s name is not on the deed, and half the payment on Steve M.'s car when E.J.M. does not drive or use the car. She also testified that Steve M. lied in a prior hearing when he testified that he had cut up his wife's Sears credit card and would not use it again, and that she believed he should spend cash from E.J.M.'s bank account on her expenses instead of incurring additional fees and interest by using her credit cards.

The mental hygiene commissioner issued its "Findings and Recommendation of Mental Hygiene Commissioner on Petition to Terminate, Revoke or Modify Appointment" that noted that Mary M. had "scrutinized a number of significant transactions . . . that . . . are being used for the benefit of the protected person and [E.J.M.] shares equally in the monthly expenses. There has been much discord between the parties. Counsel for the protected person recommended that the petition of Steve M[.] be granted." The circuit court accepted and adopted the entire findings and recommendations of the mental hygiene commissioner and ordered that Mary M. would no longer be granted access to monitor her mother's bank account. It is from that order that Mary M. now appeals.

We review this appeal using the same standard of review applied by our Supreme Court of Appeals when it reviews circuit court orders in adult guardianship and conservatorship cases:

> This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.

Syl. Pt. 6, *In re Donald M*., 233 W. Va. 416, 758 S.E.2d 769 (2014) (citing Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996)); *see also In re H.A.*, No.

2

22-ICA-40, 2023 WL 2863296, at *4 (W. Va. Ct. App. Apr. 10, 2023) (memorandum decision).

A petition to modify guardian or conservator appointments is governed by the West Virginia Guardianship and Conservatorship Act, West Virginia Code § 44A-4-6 (1994). Most important here is subsection (b), which provides:

> (b) Upon petition by the protected person, by the guardian or conservator, by any other interested person, or upon the motion of the court, the court may terminate a guardianship, conservatorship, or both, or modify the type of appointment or the areas of protection, management or assistance previously granted. Such termination, revocation or modification may be ordered if:
>
> (1) The protected person is no longer in need of the assistance or protection of a guardian or conservator;
>
> (2) The extent of protection, management or assistance previously granted is either excessive or insufficient considering the current need therefor;
>
> (3) The protected person's understanding or capacity to manage the estate and financial affairs or to provide for his or her health, care or safety has so changed as to warrant such action;
>
> (4) No suitable guardian or conservator can be secured who is willing to exercise the assigned duties; or
>
> (5) It is otherwise in the best interest of the protected person.

*Id.*

On appeal, Mary M. argues that the circuit court erred by removing her from overseeing her mother's financial accounts because of Steve M.'s allegations that she harassed him. She asserts that there is evidence that Steve M. used E.J.M.'s credit for his personal gain by making home improvements while creating unnecessary credit card debt for E.J.M. by, for example, charging $5,300.00 to E.J.M.'s credit card for new ductwork, and for using her Sears card to purchase a new refrigerator after previously testifying that he had "cut up" the card and "shredded" the information he needed to access the account online. Mary M. alleges both purchases benefitted Steve M. and were made on E.J.M.'s credit cards, incurring additional expense through interest, even though there were sufficient funds in E.J.M.'s bank account to pay cash for the items. She claims she only contacted Steve M. when she observed a new charge on her mother's credit card statements or unusual activities on her mother's bank statements. She acknowledged that she contacted him to contest a charge she observed for housecleaning because she believes that Steve M.

3

should be able to clean the house without assistance. She argues that she attempted to contact the guardian ad litem about the alleged misuse of her mother's credit cards, but that he did not respond to her. She argues that she should be reinstated as a monitor of her mother's financial accounts and that the court should remove Steve M.'s access to her mother's credit cards to prevent him from making additional charges.

Upon review, we cannot say that the circuit court abused its discretion in its determination to modify the order and remove Mary M.'s access to monitor her mother's bank account. The mental hygiene commissioner conducted a hearing wherein it took testimony from witnesses, including Mary M. and Steve M., regarding the discord between them. Moreover, the guardian ad litem for E.J.M. recommended that Steve M.'s petition to remove Mary M. be granted and further testified that he found the expenses Steve M. incurred on behalf of E.J.M. to be reasonable living expenses. The circuit court was within its discretion to adopt the findings and recommendations of the mental hygiene commissioner in this regard. We find no reason to disturb the circuit court's order on that basis.[3]

For the foregoing reasons, we affirm the circuit court's February 17, 2023, "Order Regarding Petition to Terminate, Revoke or Modify Appointment of Guardian And/Or Conservator."

Affirmed.

**ISSUED:** April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[3] Mary M. further argues that the circuit court erred by denying her request to visit her mother in her mother's home due to her mother's physical disabilities. However, it appears that no such request was before the mental hygiene commissioner or the circuit court in the underlying Petition to Modify that is the subject of the order on appeal. Moreover, the order on appeal does not modify Mary M.'s access to visit her mother. It simply states that "Heather and Mary M. shall continue to have access to their mother as set out in the prior order." As it appears this issue is not properly before this Court, we decline to address it.

4